John M. Peebles (Bar No. 237582)
Steven J. Bloxham (Bar No. 96384)
Michael A. Robinson (Bar No. 214666)
Timothy J. Hennessy (Bar No. 233595)
James Qaqundah (Bar No. 270700)
FREDERICKS PEEBLES & MORGAN LLP
2020 L Street, Suite 250
Sacramento, California 95811
Telephone: (916) 441-2700
Fax: (916) 441-2067
jpeebles@ndnlaw.com
sbloxham@ndnlaw.com
mrobinson@ndnlaw.com
thennessy@ndnlaw.com
jqaqundah@ndnlaw.com

Attorneys for Plaintiff
Picayune Rancheria of Chukchansi Indians

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; SALLY M. JEWELL, Secretary of the Interior; and LAWRENCE S. ROBERTS, Acting Assistant Secretary of the Interior for Indian Affairs,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**1**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This is a civil action against the United States Department of the Interior and its named officials (the "Department") seeking declaratory relief that certain lands in Madera County, California (the "Madera Parcel") are not eligible for gaming under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*.

2. The Madera Parcel is the site of a proposed casino/hotel resort being pursued by the North Fork Rancheria of Mono Indians ("North Fork Tribe"). Plaintiff seeks a declaration that the Madera Parcel does not come within any exception to the general prohibition against gaming on Indian trust lands acquired after October 17, 1988, the effective date of IGRA, and does not constitute "Indian lands" upon which Indian gaming may be conducted under IGRA.

3. Plaintiff further seeks a declaration that the Secretarial "two-part determination" ("Secretarial Determination") by the Assistant Secretary for Indian Affairs with respect to the Madera Parcel (which was requisite for the parcel to come within the exception to the general prohibition and qualify as "Indian lands" under IGRA), expired and became invalid by operation of law, as a result of no affirmative concurrence with such Secretarial Determination having been made by the Governor of the State of California as was required by IGRA.

4. Plaintiff also seeks injunctive relief prohibiting the Department from taking any action under IGRA based, in whole or in part, upon the Madera Parcel constituting "Indian lands" under IGRA.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question action), § 1337 (action under Act of Congress regulating commerce) and § 1362 (federal question action brought by an Indian tribe).

6. This action arises under the Constitution and laws of the United States, including but not necessarily limited to the Indian Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3; the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* and § 701 *et seq.*; the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the All Writs Act, 28 U.S.C. § 1651; 43 U.S.C. § 1451 *et seq.* (establishment and responsibilities of the Department of the Interior); and federal common law.

7. This action is brought by an Indian tribe with a governing body duly recognized by the Secretary of the Interior.

8. The sovereign immunity of the United States has been waived with respect to the subject matter of this action and the relief requested herein by the APA, 5 U.S.C. § 702.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(b), 1391(b)(2) and 1391(e)(1)(B), in that: 1) this is a civil action in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated within the judicial district of the Eastern District of California; and 2) this is a civil action against an officer or employee of the United States or any agency thereof acting in his or her official capacity or under color of legal authority, or an agency of the United States or the United States, and a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated within the judicial district of the Eastern District of California.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE. 250
SACRAMENTO, CA

## PARTIES

10. Plaintiff Picayune Rancheria of Chukchansi Indians ("Plaintiff" or the "Picayune Tribe") is a federally-recognized Indian tribe. *See* Indian Entities Recognized . . . , 81 Fed. Reg. 5019, 5022 (Jan. 29, 2016). Its principal offices are located at 8080 Palm Ave., Suite 107, Fresno, California 93711. The Picayune Tribe owns and operates the Chukchansi Gold Resort and Casino, a class III gaming facility, on its Rancheria lands at Coarsegold, California, approximately 26.4 miles from the Madera Parcel. Ancestors of the Picayune Tribe traditionally used and occupied lands in the vicinity of the Madera Parcel, and the Picayune Tribe continues to have a cultural connection to the area. The majority of the Picayune Tribe's members live in Madera County and pay taxes to both the County and State, and the Picayune Tribe provides governmental services throughout the County. Several members of the Picayune Tribe reside in the vicinity of the Madera Parcel.

11. Defendant United States Department of the Interior (the "Department") is an executive agency of the United States government, established and organized pursuant to 43 U.S.C. § 1451 *et seq*. Congress has delegated authority over Indian affairs to the Department of the Interior and the Secretary. 43 U.S.C. § 1457(10).

12. Defendant Sally M. Jewell is the Secretary of the Interior ("Secretary"). The Secretary is the chief executive officer of the United States Department of the Interior. She is sued herein in her official capacity.

13. Defendant Lawrence S. Roberts is the Acting Assistant Secretary of the United States Department of the Interior for Indian Affairs ("ASIA"). With certain exceptions not relevant to the instant action, the ASIA is authorized to exercise all of the authority of the Secretary with respect to Indian Affairs. He is sued herein in his official capacity.

## GENERAL ALLEGATIONS

14. This lawsuit involves the first attempt by a California Indian tribe to conduct class III, or Las Vegas-style, gaming on "off-reservation" lands that are generally not eligible for gaming.

15. In approximately 2004, the North Fork Rancheria of Mono Indians (hereinafter the "North Fork Tribe") purchased a 305-acre tract of "non-Indian" land in southwest Madera County,

California, just north of the City of Madera and adjacent to California State Highway 99 (the "Madera Parcel"). The purpose of the purchase was to use the Madera Parcel as the location for a major Las Vegas-style casino that would conduct class III gaming as defined in IGRA.

16. The North Fork Tribe seeks to develop a casino/hotel resort on the Madera Parcel. The Madera Parcel is located approximately 38 miles from the North Fork Tribe's 80-acre Rancheria. The Madera Parcel was privately owned until the United States took the land into trust for the North Fork Tribe on or about February 5, 2013.

17. Under section 20 of IGRA, Indian tribes are generally prohibited from conducting gaming regulated by IGRA on land acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988. 25 U.S.C. § 2719(a). IGRA provides for certain exceptions to this general rule, one of which is referred to as a Secretarial Determination, or more commonly a "two-part determination." Under the two-part determination exception, the general prohibition against gaming on after-acquired land does not apply when the Secretary "determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination." 25 U.S.C. § 2719(b)(1)(A); *see also* 25 C.F.R. § 292.13.

18. Federal regulations state that if the Governor provides a written non-concurrence, then the "applicant tribe may use the newly acquired lands only for non-gaming purposes." 25 C.F.R. § 292.23(a). Federal regulations also provide that if the Governor does not affirmatively concur within one year of the date of the request for a concurrence, the favorable two-part determination terminates and becomes ineffective unless the applying tribe or the Governor requests an extension. 25 C.F.R. § 292.23(b)-(c). The maximum extension available is 180 days. 25 C.F.R § 292.23(b).

19. The North Fork Tribe submitted a request to the Department of the Interior on or about March 1, 2005, to have the Madera Parcel acquired in trust for the North Fork Tribe. This request was supplemented on or about March 29, 2006, with a request for a two-part determination pursuant to 25 U.S.C. § 2719(b)(1)(A).

20. On or about September 1, 2011, Assistant Secretary – Indian Affairs Larry Echo Hawk issued a Record of Decision making his two-part determination, favorable to the North Fork Tribe, and requested California Governor Edmund G. Brown, Jr.'s concurrence in the two-part determination.

21. On information and belief, multiple groups, persons and/or entities requested that the Governor seek the extension available pursuant to 25 C.F.R. § 292.23(b) for consideration of the concurrence in the favorable two-part determination regarding the Madera Parcel.

22. On or about August 30, 2012, on the last day before the Secretary's favorable two-part determination expired and became invalid, Governor Brown issued a letter "concurring" in the two-part determination. A copy of the Governor's August 30, 2012 concurrence letter is attached as **Exhibit A**.

23. The Governor's concurrence was contingent upon and tied together as a single package with the tribal-state gaming compact the Governor and the North Fork Tribe executed on or about August 31, 2012 ("2012 Compact"). A copy of the 2012 Compact is attached as **Exhibit B**.

24. Consistent with article IV, section 19(f), of the California Constitution, the compact provided that it "shall not be effective unless and until all of the following have occurred: (a) The Compact is ratified in accordance with State law . . . ." 2012 Compact § 14.1(a), Exhibit B at 106.

25. The concurrence identifies "several exceptional circumstances" that made the Governor willing to concur with the Secretary's two-part determination. At least three of the seven bullet-pointed circumstances describe terms contained in the 2012 Compact:

> A large tribal population will directly benefit from the gaming facility. The North Fork Mono's compact guarantees that revenues from the gaming facility will be shared directly with the Wiyot Tribe, which has agreed to forgo gaming on its own lands – including environmentally sensitive areas.

> Other tribes will indirectly benefit from the gaming facility. The North Fork Mono's compact provides assistance to other tribes by requiring substantial contributions to the Revenue Sharing Trust Fund and the Tribal Nation Grant Fund.

> The ability of other tribes to benefit from gaming will not be unduly harmed. The North Fork Mono's compact specifically provides mitigation for the only tribe likely to be affected by the gaming facility, the Picayune Rancheria of the Chukchansi.

Exhibit A at 1-2.

26. The 2012 Compact also states that the Governor was willing to concur in the Secretary's IGRA determination because the North Fork Tribe was willing to agree to the specific terms of the 2012 Compact. The 2012 Compact's preamble states in relevant part:

> WHEREAS, in light of the Tribe's willingness to locate its Gaming Facility on the 305-Acre Parcel instead of an environmentally-sensitive area, to make revenue sharing payments to the Wiyot Tribe to facilitate that tribe's sovereign agreement with the State to forgo gaming on environmentally sensitive land, to make revenue sharing payments to the Chukchansi Indian Tribe to mitigate potential competitive impacts on that tribe, and to mitigate project impacts on the local community and environment, and in light of the County's support for the proposed Gaming Facility and the other covenants of this Compact, the Governor will concur in the favorable determination by the Secretary that the Gaming Facility would be in the best interests of the Tribe and its citizens and not detrimental to the surrounding community . . .

Exhibit B at 3-4.

27. On or about November 26, 2012, Assistant Secretary – Indian Affairs Kevin Washburn issued a Record of Decision to accept the Madera Parcel into trust for the North Fork Tribe. *See* Land Acquisitions; North Fork Rancheria of Mono Indians of California, 77 Fed. Reg. 71611 (Dec. 3, 2012).) Bureau of Indian Affairs Pacific Regional Director Amy Dutschke accepted conveyance of the Madera Parcel in trust for the North Fork Tribe on or about February 5, 2013.

28. On or about June 27, 2013, the California legislature passed Assembly Bill No. 277 ("AB 277"). AB 277 provided that it "ratified" the 2012 Compact. The Governor signed AB 277 on or about July 3, 2013.

29. Pursuant to the California Constitution, AB 277 would not take effect until January 1, 2014, unless a voter referendum on AB 277 qualified for the ballot, in which case AB 277 would not take effect (if at all) until the day after the election. Cal. Const., art. IV, § 8(c)(1) and art. II, §§ 9, 10.

30. Notwithstanding that the 2012 Compact was not yet effectively ratified in accordance with State law, California Secretary of State Debra Bowen transmitted the compact to Paula Hart, Director of the Office of Indian Gaming, U.S. Department of the Interior, on or about July 16, 2013, together with a letter informing Ms. Hart that a referendum on AB 277 had been filed, and that if it qualified for the ballot, "the part of the statute ratifying the compact will be stayed/suspended until

the voters have voted to either reject or adopt it." A copy of California Secretary of State Bowen's July 16, 2013 letter is attached as **Exhibit C**.

31. On or about, August 9, 2013, California Secretary of State Debra Bowen transmitted a second letter to Ms. Hart clarifying that the referendum on AB 277 also concerned a Tribal-State compact between the State of California and the Wiyot Tribe ("Wiyot Compact"). A copy of California Secretary of State Bowen's letter dated August 9, 2013 is attached as **Exhibit D.**

32. On October 22, 2013, Assistant Secretary – Indian Affairs Kevin Washburn published notice of the 2012 Compact taking effect. Indian Gaming, 78 Fed. Reg. 62649 (Oct. 22, 2013). The notice states that because the Secretary did not affirmatively approve or disapprove the 2012 Compact within 45 days of its submission by the Tribe and the State, "the compact is considered to have been approved, but only to the extent that the Compact is consistent with IGRA." *Id.*

33. On or about November 20, 2013, California Secretary of State Bowen transmitted a letter to Director of the Office of Indian Gaming, U.S. Department of the Interior, Paula Hart, informing Ms. Hart, that the referendum measure referenced in Ms. Bowen's July 16, 2013 and August 9, 2013, letters qualified for the ballot and would be presented to California voters on the November 4, 2014 General Election ballot rather than the June 2014 election ballot. Consequently, Ms. Bowen's letter informed Ms. Hart that the implementation of the 2012 Compact and Wiyot Compact would be stayed until November 2014. A copy of California Secretary of State Bowen's November 20, 2013 letter is attached as **Exhibit E.**

34. On November 4, 2014, California voters voted on Proposition 48, the statewide referendum on AB 277. Proposition 48 was defeated with 61% "No" votes. As a result, AB 277 never went into effect.

35. The Governor's authority under state law to concur in in the Secretary's two-part determination is ancillary and incidental to his authority to "negotiate and conclude compacts." Cal. Const., art. IV, § 19(f).

36. Madera County Superior Court Judge Michael J. Jurkovich held that the Governor's authority under state law to concur in the Secretary's two-part determination is part of his power under California Constitution article IV, section 19(f). *Stand Up for California v. State of California*

8

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

(Super. Ct. Madera County, 2014, No. MCV062850), Ruling on Demurrers to First Amended Complaint, Mar. 3, 2014 (F069302, app. pending).) Judge Jurkovich summarized his holding as follows:

> The language of the California Constitution is clear. Under California Constitution article IV, section 19(f), the Governor has the power to "negotiate and conclude compacts, subject to ratification by the Legislature, for [Class III gaming] by federally recognized Indian tribes on Indian lands in California in accordance with federal law…" Under the two part test of the IGRA (federal law), land can be taken into trust by the federal government (to become Indian lands) subject to the concurrence of the Governor. To the court, the plain meaning of section 19(f) is as follows: the Governor may negotiate and conclude compacts on Indian lands – regardless of when those lands become "Indian lands" – or whether they are "off-reservation" – so long as such actions are in compliance with federal law (e.g. the IGRA). To hold otherwise would make the phrase "negotiate and conclude compacts" meaningless, where concurrence is necessary under, for example, the two part test of 25 U.S.C. section 2719(b)(1)(A) (federal law). If the Governor cannot "concur" with the Secretary of the Interior in the Secretary's decision to put the land into trust, how can he then "negotiate and conclude" a compact that, to be enforceable, depends upon the concurrence?

*Id.* at 7.

37. The Governor's authority under the California Constitution, article IV, section 19(f), is "subject to ratification by the Legislature." Cal. Const., art. IV, § 19(f).

38. Under California law, a statute is not effective until January 1, following the 90 days after it is enacted, with certain exceptions not relevant here. Cal. Const., art. IV, § 8(c)(1). If a referendum to approve or reject a statute qualifies to be submitted to the electors, then the subject statute takes effect (if at all) the day after the referendum election. Cal. Const., art. II, §§ 9, 10.

39. Prior to the vote on Proposition 48, Judge Jurkovich held that AB 277 was "subject to referendum under the State Constitution," and that the North Fork Tribe's other objections to the validity of Proposition 48 were without merit. *Stand Up for California v. State of California* (Super. Ct. Madera County, 2014, No. MCV062850), Ruling on Demurrers to Cross-Complaint, June 26, 2014 (F070327, app. pending).)

40. The referendum on AB 277, Proposition 48, rejected AB 277. Therefore, AB 277 never went into effect.

41. The Governor's actions taken pursuant to the authority granted to him in article IV, section 19(f), of the State Constitution are ineffective unless they are ratified by the legislature.

42. The 2012 Compact did not take effect because the legislature's ratification of the 2012 Compact did not take effect.

43. The concurrence did not take effect because the concurrence was expressly conditioned on the effectiveness of specified provisions of the 2012 Compact.

44. Additionally, the concurrence did not take effect because the legislature's ratification of the concurrence did not take effect.

45. On information and belief, the Governor maintains that the concurrence was and is effective, or he has failed and refused to acknowledge that the concurrence was and is ineffective.

46. The North Fork Tribe sued the State of California in the United States District Court for the Eastern District of California, in Fresno, on or about March 17, 2015. *North Fork Rancheria of Mono Indians v. State of California*, No. 1:15-cv-00419-AWI-SAB (E.D. Cal., Complaint filed Mar. 17, 2015). The North Fork Tribe claimed that the State, in violation of IGRA, failed to engage in good faith gaming compact negotiations. On information and belief, the State did not assert the available defense that the Governor's concurrence was ineffective, and consequentially that the State had no duty under IGRA to negotiate a compact for gaming at the Madera Parcel. On or about November 13, 2015, the court found in favor of the North Fork Tribe and ordered the parties to engage in the remedial process prescribed by IGRA, which involves either concluding a new gaming compact through negotiation or mediation, or securing gaming procedures prescribed by the Secretary. *See* 25 U.S.C. § 2710(d)(7)(B)(iii). On April 11, 2016, operating on the assumption that the Madera Parcel is eligible for gaming, the Court-appointed mediator transmitted the matter to the Secretary of Interior in order for the Department of the Interior to issue procedures under which North Fork could conduct gaming. On information and belief, the Department of the Interior currently is preparing to issue procedures. On information and belief, the gaming compact or gaming procedures that result from the process will not provide for mitigation to the Picayune Tribe comparable to the mitigation measures provided in the 2012 Compact. On or about March 18, 2016, the Picayune Tribe moved to intervene in *North Fork v. State of California*, arguing that North Fork's claim under IGRA for failure to negotiate in good faith is not ripe for judicial review because the issue of whether the Madera Site is eligible for gaming is not settled and currently at issue in

litigation in other Courts. On June 27, 2016, the Eastern District of California issued an order denying the Picayune Tribe's motion to intervene. However, based on concerns raised by the Picayune Tribe's motion, the Court ordered briefing on whether a stay should be imposed. The Court further allowed the Picayune Tribe to participate in the briefing as *amicus curiae*. Briefing on whether a stay should be imposed is scheduled to be completed by July 22, 2016. However, the Court did not order the Department of the Interior to refrain from issuing procedures during the briefing on whether a stay should be imposed. On information and belief, the Department of the Interior still is preparing to issue procedures.

47. On or about March 21, 2016, the Picayune Tribe brought suit against the Governor of the State of California in the Superior Court of California for the County of Madera. *Picayune Rancheria of the Chukchansi Indians v. Brown*, No. MCV072004 (Super. Ct. Madera County, Complaint filed Mar. 21, 2016). On May 13, 2016, California filed a Demurrer, and North Fork moved to intervene. The parties completed briefing on North Fork's motion to intervene on June 10, 2016. On June 17, 2016, the Court continued the hearing on North Fork's motion to intervene, and the hearing is now scheduled for July 8, 2016 at 8:30 a.m. The Court suspended briefing on Governor Brown's Demurrer until after a decision on North Fork's motion to intervene.

48. The North Fork Tribe's proposed casino/hotel resort at the Madera Parcel will cause significant financial harm to the Picayune Tribe's gaming facility, the Chukchansi Gold Resort and Casino, because many of the people who would patronize the Chukchansi Gold Resort and Casino will instead patronize the North Fork Tribe's proposed casino/hotel resort, as a result of the Madera Parcel's location adjacent to State Route 99. The 2012 Compact would have partially mitigated the financial harm to the Chukchansi Gold Resort and Casino.

## FIRST CLAIM FOR RELIEF

**Declaratory Relief – Ineffectiveness of Gubernatorial Concurrence under IGRA.**

49. The Picayune Tribe realleges and incorporates by reference all of the allegations contained in paragraphs 1-48, inclusive, as though they were fully set forth here.

50. The Governor's authority to concur in a favorable Secretarial two-part determination is incidental to and derivative of his authority to negotiate and conclude tribal-state gaming compacts pursuant to article IV, section 19(f) of the California Constitution.

51. As a derivative power, incidental to his power negotiate and conclude tribal-state gaming compacts, the Governor's power to concur in a favorable Secretarial two-part determination is subject to ratification by the California Legislature, pursuant to article IV, section 19(f) of the California Constitution.

52. The California legislature did not expressly ratify the Governor's concurrence in the favorable Secretarial two-part determination regarding the Madera Parcel.

53. Because the Governor's concurrence was never ratified by the California Legislature it is invalid under California law, and never went into legal effect.

## SECOND CLAIM FOR RELIEF

**Declaratory Relief-Invalidity of Retroactive Ratification of Governor's Concurrence.**

54. The Picayune Tribe realleges and incorporates by reference all of the allegations contained in paragraphs 1-48, inclusive, as though they were fully set forth here.

55. The Governor's concurrence in the favorable Secretarial two-part determination relating to the Madera Parcel was tied to the terms of the 2012 Compact and presented as a "package deal" with the 2012 Compact.

56. Article IV, section 19(f) gubernatorial authority exercised pursuant to that article is not effective unless such action is ratified by the California Legislature.

57. On November 4, 2014, the California Legislature passed AB 277, which purported to ratify the 2012 Compact and therefore everything tied to and packaged with 2012 Compact.

58. The Governor has maintained that the California Legislature's ratification of AB 277 "retroactively" ratified the Governor's concurrence in the favorable Secretarial two-part determination regarding the Madera Parcel.

59. Pursuant to article II, sections 9 and 10, and Article IV, section 8(c)(1) of the California Constitution, AB 277 did not become immediately effective because it was subject to referendum.

60. On November 20, 2013, the California Secretary of State Bowen certified a referendum measure on AB 277.

61. The qualification of the referendum on AB 277 caused the California Legislature's purported ratification of the 2012 Compact and everything tied to and packaged with 2012 Compact to be ineffective until the day after the November 14, 2014, California General Election.

62. On November 4, 2014, the California voters rejected AB 277 by a vote of 61% against and 39% in favor.

63. In rejecting AB 277, the California voters rejected the 2012 Compact and everything tied to and presented as a package deal with the 2012 Compact, including the Governor's concurrence in the Secretary's favorable two-part determination.

64. Because the 2012 Compact and related concurrence were disapproved by referendum, neither ever became effective.

### THIRD CLAIM FOR RELIEF

#### Declatory Relief – Ineffectiveness of Conditional Concurrence

65. The Picayune Tribe realleges and incorporates by reference all of the allegations contained in paragraphs 1-48, inclusive, as though they were fully set forth here.

66. The Governor's concurrence stated that the Governor was willing to concur in the favorable Secretarial two-part determination relating to the Madera Parcel because of "several exceptional circumstances," at least three of which were terms contained in the 2012 Compact.

67. The 2012 Compact also states that the Governor was willing to concur in the Secretary's IGRA determination because the North Fork Tribe was willing to agree to the specific terms of the 2012 Compact.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

FREDERICKS PEEBLES & MORGAN LLP
2020 L ST., STE. 250
SACRAMENTO, CA

68. The terms of the Governor's willingness to concur indicate that the Governor would not have concurred but for those "several exceptional circumstances," such that the Governor's concurrence was conditioned upon the "several exceptional circumstances."

69. Because the 2012 Compact never became effective, at least some of the conditions upon which the Governor's concurrence were predicated never occurred. Because the conditions of the concurrence never occurred, the concurrence never went into effect.

## FOURTH CLAIM FOR RELIEF

**Declaratory Relief – Invalidity of Secretarial Determination under IGRA.**

70. The Picayune Tribe realleges and incorporates by reference all of the allegations contained in paragraphs 1-48, inclusive, as though they were fully set forth here.

71. On September 1, 2011, Assistant Secretary—Indian Affairs, Larry Echo Hawk issued a favorable two-part determination regarding the Madera Parcel and requested the Governor's concurrence therein.

72. Pursuant to 25 C.F.R. section 292.23, the Governor had to affirmatively concur in the favorable two-part determination for the Madera Parcel within one year of the determination or by force of law the determination would no longer be valid and effective.

73. The Governor was required to effectively concur in the favorable Secretarial two-part determination on or before August 31, 2012 or the determination became invalid. Because the Governor's concurrence was not ratified by the California Legislature, or alternatively because the California Legislature's "retroactive" ratification was rejected by the referendum on AB 277, the concurrence never became effective.

74. As a consequence of the concurrence not being effective on August 31, 2012, the Secretarial two-part determination relating to the Madera Parcel is no longer valid or effective.

## FIFTH CLAIM FOR RELIEF

**Declaratory Relief – Indians Land Status under IGRA.**

75. The Picayune Tribe realleges and incorporates by reference all of the allegations contained in paragraphs 1-48, inclusive, as though they were fully set forth here.

76. Under section 20 of IGRA, Indian tribes are generally prohibited from conducting gaming regulated by IGRA on land acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988. 25 U.S.C. § 2719(a). IGRA provides for certain exceptions to this general rule, one of which is referred to as a Secretarial Determination, or more commonly a "two-part determination." Under the two-part determination exception, the general prohibition against gaming on after-acquired land does not apply when the Secretary "determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination." 25 U.S.C. § 2719(b)(1)(A); *see also* 25 C.F.R. § 292.13.

77. The Governor's concurrence in a favorable Secretarial two-part determination must be valid under state law.

78. The Governor's concurrence in the favorable Secretarial two-part test was not valid and never became effective under California Law.

79. Because the Governor's concurrence was not ratified, as required by California law, on or before, August 31, 2012, under the provisions of 25 C.F.R. section 292.23, the Secretary's favorable two-part determination expired.

80. Because there is no valid affirmative concurrence, the Madera Parcel does not constitute "Indian lands" under IGRA.

81. Because the Secretary's favorable two-part determination has expired the Madera Parcel does not constitute "Indian lands" under IGRA.

## SIXTH CLAIM FOR RELIEF

### Declaratory Relief – Validity of Secretarial Procedures under IGRA.

82. The Picayune Tribe realleges and incorporates by reference all of the allegations contained in paragraphs 1-48, inclusive, as though they were fully set forth here.

83. IGRA provides that if a state fails to consent within 60 days to a mediator selected compact arising out of court's finding that the State acted in "bad faith" regarding negotiation a

tribal-state compact, the Secretary of Interior "shall prescribe" procedures under which class III gaming may be conducted on the Indian lands over which an effected Indian tribe has jurisdiction. 25 U.S.C. § 2710(d)(7)(B)(vii)(II).

84. Any procedures the Secretary prescribes must be "consistent" with the provisions of IGRA and "the relevant portions of the laws of the State of California." 25 U.S.C. § 2710(d)(7)(B)(vii)(I).

85. Because the Madera Parcel does not constitute "Indian lands" under IGRA, the Secretary cannot prescribe procedures regarding the conduct of class III gaming on the Madera Parcel.

86. Because the referendum on AB 277 established that, under California law, the voters of California declared that the Madera Parcel does not qualify for gaming under the IGRA, the Secretary cannot prescribe any procedures under which class III gaming can occur on the Madera Parcel.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Relief—Class II Gaming

87. Class II gaming under IGRA includes bingo and card games that are explicitly authorized, or not explicitly prohibited, by the laws of the State. 25 U.S.C. § 2703(7)(A).

88. IGRA regulates the conduct of class II gaming on Indian lands. 25 U.S.C. §§ 10(a) through (c) and 2710(d)(1).

89. Gaming regulated by IGRA is prohibited on lands acquired after October 17, 1988. 25 U.S.C. § 2719(a).

90. IGRA provides for certain exceptions to this general rule, one of which is referred to as a Secretarial Determination, or more commonly a "two-part determination." Under the two-part determination exception, the general prohibition against gaming on after-acquired land does not apply when the Secretary "determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be

conducted concurs in the Secretary's determination."  25 U.S.C. § 2719(b)(1)(A); *see also* 25 C.F.R. § 292.13.

91. Because the Governor's concurrence in the Secretary's favorable two-part determination regarding the Madera Parcel was never properly ratified pursuant to California law the concurrence never went into effect.

92. Because the Governor's concurrence never went into effect the Madera Parcel does not constitute "Indian lands" under IGRA.

93. Because the Governor's concurrence never went into effect, he did not concur in the Secretary's favorable two-part determination regarding the Madera Parcel before August 31, 2012, causing the favorable two-part determination to expire.

94. Because there is no valid Gubernatorial concurrence or favorable two-part determination, the Madera Parcel may not utilized for the conduct of class II gaming as defined and regulated by IGRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this honorable Court grant the following relief:

1. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the Madera Parcel does not constitute "Indian Lands" within the meaning of IGRA, 25 U.S.C. § 2703, upon which Indian gaming may lawfully be conducted;

2. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the Secretarial Determination concerning the Madera Parcel issued by the Assistant Secretary – Indian Affairs on or about September 1, 2011, expired by operation of law on or about September 1, 2012, and is not and has not been valid from and after the date it so expired;

3. A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the Governor of California never affirmatively concurred in the Secretarial Determination concerning the Madera Parcel;

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE. 250
SACRAMENTO, CA

4.   Injunctive relief prohibiting the Department from taking any action required or authorized or otherwise permitted by or under IGRA based upon, in whole or in part, the Madera Parcel constituting "Indian Lands" under IGRA;

5.   Attorneys' fees and costs of suit in accordance with the Equal Access to Justice Act; and

6.   Such other and further relief as the Court deems just and proper.

Dated: July 1, 2016                               Respectfully submitted,

FREDERICKS PEEBLES & MORGAN LLP
John M. Peebles
Steven J. Bloxham
Michael A. Robinson
Timothy J. Hennessy
James Qaqundah

By: _____
Michael A. Robinson, Esq.

Attorneys for Plaintiff
Picayune Rancheria of Chukchansi Indians