1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

PICAYUNE RANCHERIA OF
CHUKCHANSI INDIANS,

                Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
THE INTERIOR; SALLY M. JEWELL,
Secretary of the Interior; and LAWRENCE
S. ROBERTS, Acting Assistant Secretary of
the Interior for Indian Affairs,

                Defendants.

**CASE NO. 1:16-CV-00950-AWI-EPG**

**ORDER GRANTING NORTH FORK'S
MOTION TO INTERVENE AS A
MATTER OF RIGHT**

20

**I. Introduction**

21

      The Picayune Rancheria of Chukchansi Indians ("Picayune"), a federally recognized

22

Indian tribe, owns and operates the Chukchansi Gold Resort and Casino, a class III gaming

23

facility in Coarsegold, California. Picayune has filed suit against the United States Department of

24

the Interior ("DOI"), the Secretary of the Interior ("the Secretary") and the Assistant Secretary of

25

the DOI for Indian Affairs ("ASIA"), seeking a declaration of invalidity of several Secretarial

26

determinations surrounding class III gaming by the North Fork Rancheria of Mono Indians

27

("North Fork") on a 305-acre parcel of land in Madera County ("the Madera Parcel"). North

28

Fork moves to intervene in this action permissively and as a matter of right. North Fork's motion

1

is unopposed. It will be granted.

## II. Background[1]

In approximately 2004, North Fork purchased the Madera Parcel, just north of the city of Madera and west of California State Highway 99. On March 1, 2005, North Fork submitted a fee-to-trust application to the DOI, requesting that the DOI take the Madera Parcel into trust for the benefit of the tribe pursuant to the Indian Reorganization Act ("IRA"). The application was supplemented on or about March 29, 2006, with a request for a two-part determination[2] pursuant to 25 U.S.C. § 2719(b)(1)(A). An Environmental Impact Study ("EIS") was undertaken and the results were published on August 6, 2010. "After reviewing the results of the EIS, the submissions of state and local officials and surrounding Indian tribes, and the likely economic impact on North Fork and the surrounding communities, the [ASIA] recommended approval of (and requested the California Governor's concurrence [in]) [North Fork's] bid for acquisition … [of the]Madera parcel[] [in trust by the United States] for the benefit of North Fork pursuant to the [IRA] in anticipation of North Fork's construction of a class III gaming facility as contemplated by" the Indian Gaming Regulatory Act ("IGRA"). *North Fork v. California*, Doc. 25 at 3. On August 30, 2012, Governor Brown issued a letter purporting to concur in the Secretary's two-part determination. On February 5, 2013, the United States took the Madera parcel into trust for North Fork.

In 2012, a Tribal-State gaming compact[3] ("the 2012 compact") was negotiated between the State of California ("California") and North Fork for gaming on the Madera Parcel. The California Constitution provides that such a compact is not effective until it is "ratified in

---

[1] The Court has previously set forth detailed histories of the conflict surrounding North Fork's bid to conduct class III gaming on the Madera Parcel. *See North Fork Rancheria of Mono Indians of California v. State of California*, No. 15-cv-419-AWI-SAB ("*North Fork v. California*"), Docs. 25, 46. Here, the Court only provides the facts necessary to resolve the instant motion to intervene.

[2] The two-part determination of § 2719(b)(1)(A) provides an exception to the general prohibition on class III gaming on lands acquired after October 17, 1988, by asking if gaming on the newly acquired lands is in the best interest of the Indian tribe and its members, and if such gaming would be non-detrimental to the surrounding community. The two-part determination requires an affirmative finding on both questions by the Secretary of the Interior and concurrence by the Governor of the State in which the gaming activity is to be conducted.

[3] IGRA requires an Indian tribe to conclude a Tribal-State compact, governing the ways in which gaming can be conducted, with the State in which the tribe seeks to conduct class III gaming before it is permitted to conduct class III gaming. *See* 25 U.S.C. § 2710(d)(1)(C).

accordance with State law….” Cal. Const., art. IV, § 19(f). On June 27, 2013, the California legislature passed Assembly Bill No. 277 (“AB 277”), ratifying the 2012 compact. The Governor signed AB 277 on July 3, 2013 and it was filed with the California Secretary of State. The then-Secretary of State, Deborah Bowen, forwarded the compact to United States Secretary of the Interior for review and approval pursuant to 28 U.S.C. § 2710(d)(8). On October 22, 2013, the Assistant Secretary of the Interior, Bureau of Indian Affairs, issued notice that the compact between the State and North Fork was approved (to the extent that it was consistent with IGRA). Notice of Tribal-State Class III Gaming Compact taking effect, 78 FR 62649-01 (Oct. 22, 2013).

On July 19, 2013, a ballot summary and title were issued by the Attorney General of California’s office for what would be commonly known as California Proposition 48 – Referendum on Indian Gaming Compacts (2014). On October 1, 2013, proponents of the referendum submitted 784,571 signatures from registered voters in support of placing Proposition 48 on the ballot for the November 2014 election. The then-Secretary of State, Debra Bowen, certified that the signatures submitted contained a sufficient number of valid signatures to place the matter on the ballot. *See* Cal. Const., art. II, § 9(b). On November 4, 2014, California voters voted on Proposition 48. Sixty-one percent of voters voted against the ratification of the North Fork compact.

The Court omits discussion of the multiple litigations related to North Fork’s planned class III gaming facility on the Madera Parcel. Instead, it is sufficient to note that the following actions are related to this case: *North Fork Rancheria of Mono Indians v. State of California*, No. 1:15-cv-00419-AWI-SAB (E.D. Cal.), *Stand Up for California! v. U.S. Dep’t of Interior and Picayune Rancheria v. United States*, consolidated as Case No. 1:12-cv-02039-BAH (D.D.C.), *Picayune Rancheria of Chukchansi Indians v. Brown*, Madera County Case No. MCV 072004 (California Superior Court, County of Madera), *Picayune Rancheria of Chukchansi Indians v. Brown,* Case No. C074506 (California Court of Appeal, Third Appellate District), and *Stand Up for California! v. State of California*, Case No. F069302 (California Court of Appeal, Fifth Appellate District).

///

### III. Discussion

A. Legal Standard

Federal Rule of Civil Procedure 24 provides for both intervention as a matter of right and permissive intervention. A court must permit an applicant to intervene when:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. [citation] [¶] Each of these four requirements must be satisfied to support a right to intervene. [citation] While Rule 24 traditionally receives liberal construction in favor of applicants for intervention. [citation], it is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met. [citation].

*Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (quotation marks and citations omitted); *accord Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843, 853 (9th Cir. 2016); *see* Fed. R. Civ. P. 24(a)(2). Even where a party does not have a right to intervene, a district court may permit intervention where the party "has a claim or defense that shares with the main action a common question of law or fact" and such intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

B. Timeliness

The timeliness inquiry considers the totality of the circumstances, with a focus on three factors: (1) the stage of the proceedings, (2) the prejudice to the other parties, and (3) the reason for any delay. Timeliness is measured from the date that the putative intervenor "should have been aware [that its] interests would [not] be protected adequately by the parties…." *Chamness*, 722 F.3d at 1121 (citation omitted).

At the time of filing of this motion, the Secretary had not filed an answer and the Court had yet to hold an initial scheduling conference; essentially the only item before the Court was Picayune's First Amended Complaint ("FAC"). Temporally, North Fork's motion was filed fewer than thirty days after Picayune filed its FAC. North Fork filed its motion at an early stage of the proceedings. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (a putative intervenor's motion was timely where it was filed "less than three

1  months after the complaint was filed and less than two weeks after the [defendant] filed its

2  answer….")

3      Neither of the present parties identifies any prejudice that either would suffer if North

4  Fork were permitted to intervene. The Court does not anticipate any prejudice to the parties if

5  North Fork is permitted to intervene.

6      No explanation for delay in filing a motion to intervene is necessary here; North Fork's

7  promptly filed its motion. North Fork's motion to intervene is timely.

8  C. Protectable Interest

9      Whether a putative intervenor has a sufficiently protectable interest "is a practical,

10  threshold inquiry." *Southwest Center for Biological Diversity v. Berg*, 268 F.2d 810, 818 (9th

11  Cir. 2001); *accord California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir.2006).

12  To demonstrate such an interest, prospective intervenor must establish that "the interest

13  [asserted] is protectable under some law, and that there is a relationship between the legally

14  protected interest and the claims at issue." *Southwest Center for Biological Diversity*, 268 F.2d at

15  818. Where injunctive or declaratory relief is sought, a putative intervenor has a significantly

16  protectable interest in an action when "the relief sought by plaintiffs will have direct, immediate,

17  and harmful effects" upon its interest. *Southwest Center for Biological Diversity*, 268 F.2d at

18  818.

19      Here, Picayune seeks relief that would prevent North Fork from conducting class III

20  gaming on the Madera Parcel and could result in the Madera Parcel no longer being Indian Land

21  at all. North Fork would be the entity primarily impacted if Picayune is granted the relief it

22  seeks. It is well established that an Indian tribe has a protectable interest in an action challenging

23  an agency's determination when reversal of that determination would have an impact on the

24  tribal land. *See, e.g., Match-E-Be-Nash-She-Wish Bank of Pottawatomi Indians v. Patchak*, 132

25  S.Ct. 2199, 2204 (2012); *No Casino in Plymouth v. United States Department of Interior*, 2013

26  WL 5159011, *2 (E.D. Cal. Sept. 12, 2013). This case is no exception; North Fork has a

27  significant protectable interest in this action.

28  ///

5

1   D. Practical Impairment of Protectable Interest

2        In order to satisfy the third prong of the intervention of right inquiry, North Fork's

3   interests the case must be such that its resolution will have an actual effect on it. *Arakaki v.*

4   *Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003). Disposition of this case could, as a practical

5   matter, have an impact on North Fork's interest in maintaining the Indian lands status of and

6   conducting class III gaming on the Madera Parcel. Because the relief sought by Picayune would

7   directly impair North Fork's interest, litigation of this action without North Fork would render

8   North Fork unable to protect its interest.

9   E. Adequacy of Present Representation.

10        The showing required is minimal to establish that the existing parties *may not* adequately

11   represent the putative intervenor. *Arakaki*, 324 F.3d at 1086.

12        The Secretary contends that the federal defendants adequately represent North Fork's

13   interest. The Secretary's interest—to defend her determinations and the determinations of the

14   assistant secretary—are certainly in line with North Fork's interest. However, as North Fork

15   points out, at least one action by the Secretary (proscribing procedures by which North Fork

16   could conduct class III gaming) was taken as a result of relief sought by North Fork from this

17   Court. Where governmental defendants take action as a result of successful litigation by a

18   putative intervenor, the governmental defendant's interest in defending that action are presumed

19   to be less strong than the intervenor's interest. *See Citizens for Balanced Use v. Montana*

20   *Wilderness Ass'n*, 647 F.2d 893, 899 (9th Cir. 2011).

21        Moreover, some Picayune's claims are more related to conduct by the State of California

22   than to conduct by the Secretary. The federal defendants' interest in defending determinations by

23   California that directly impact North Fork is certainly less than North Fork's interest in

24   defending determinations by California that directly impact North Fork.

25        The federal defendants may not adequately represent North Fork's interests.

26   F. Conclusion

27        North Fork will be permitted to intervene in this action as a matter of right. Even if that

28   were that not the case, North Fork would be permitted to permissively intervene because it "has a

… defense that shares with the main action … common question[s] of law or fact" and North Fork's intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."

### IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that North Fork's motion to intervene is GRANTED.

IT IS SO ORDERED.

Dated:   October 21, 2016

SENIOR  DISTRICT  JUDGE