1  John M. Peebles (Bar No. 237582)
   Steven J. Bloxham (Bar No. 96384)
2  Michael A. Robinson (Bar No. 214666)
   Tim Hennessy (Bar No. 233595)
3  James Qaqundah (Bar No. 270700)
   FREDERICKS PEEBLES & MORGAN LLP
4  2020 L Street, Suite 250
   Sacramento, California 95811
5  Telephone: (916) 441-2700
   Fax: (916) 441-2067
6  jpeebles@ndnlaw.com
7  sbloxham@ndnlaw.com
   mrobinson@ndnlaw.com
8  thennessy@ndnlaw.com
9  jqaqundah@ndnlaw.com

10 Attorneys for Plaintiff
11 Picayune Rancheria of Chukchansi Indians

12                **UNITED STATES DISTRICT COURT**

13               **EASTERN DISTRICT OF CALIFORNIA**

14

15
   PICAYUNE RANCHERIA OF CHUKCHANSI          No. 1:16-cv-00950-AWI-EPG
16 INDIANS,
                                             **PLAINTIFF'S MEMORANDUM OF**
17              Plaintiff,                    **POINTS AND AUTHORITIES IN**
                                             **SUPPORT OF MOTION FOR SUMMARY**
18              v.                            ~~**JUDGMENT**~~

19 UNITED STATES DEPARTMENT OF THE
   INTERIOR; SALLY M. JEWELL, Secretary of
20 the Interior; and LAWRENCE S. ROBERTS,
   Acting Assistant Secretary of the Interior for
21 Indian Affairs,

22              Defendants.

23

24

25

26

27

28

## TABLE OF CONTENTS

**PAGE**

Table of Contents ........................................................................................................... i

Table of Authorities ........................................................................................... ii, iii, iv

I.  INTRODUCTION ............................................................................................. 1

II.  BACKGROUND AND MATERIAL FACTS ..................................................... 2

      A.    Regulation of Indian Gaming and Authorization of Indian Gaming In California ........................................................................................... 2

      B.    Undisputed Material Facts ....................................................................... 5

      C.    Related Actions ........................................................................................ 9

III.  LEGAL STANDARD ........................................................................................ 10

IV.  DICUSSION ..................................................................................................... 11

      A.    North Fork Cannot Legally Conduct Gaming at the Madera Site ........ 11

      B.    Secretarial Procedures for the Madera Site are Unlawful under Federal and California Law and Cannot Authorize Gaming at the Madera Site ............................................................................................ 14

V.  CONCLUSION ................................................................................................. 17

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA

# TABLE OF AUTHORITIES

PAGE

## Cases

*California v. Cabazon Band of Mission Indians* (1987)
480 U.S. 202 .................................................................................................................................. 2

*Confederated Tribes of Siletz Indians of Oregon v. United States* (9th Cir. 1997)
110 F.3d 688 ........................................................................................................... 12, 17

*County of Amador, California v. United States Department of the Interior* (E.D. Cal. 2015)
136 F.Supp.3d 1193 ................................................................................................ 11

*Kickapoo Tribe of Indians v. Babbitt,* (D.D.C. 1993)
827 F.Supp. 37 ........................................................................................................ 17

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Engler* (6th Cir. 2002)
304 F.3d 616 ............................................................................................................ 15

*Mechoopda Indian Tribe of Chico Rancheria, Cal. v. Schwarzenegger* (March 12, 2004)
2004 WL 1103021 .................................................................................................... 15

*North Fork v. California* (E.D. Cal. June 27, 2016)
2016 WL 3519245 ...................................................................................................... 5

*North Fork v. California* (E.D. Cal. August 10, 2016)
2016 WL 4208452 ........................................................................................... 5, 16, 17

*Pueblo of Santa Ana v. Kelly* (10th Cir. 1997)
104 F.3d 1546 .......................................................................................................... 17

*Sequoia Forestkeeper v. Benson* (E.D. Cal. 2015)
108 F.Supp.3d 917 ............................................................................................... 6, 10

*Sierra Club v. Mainella* (D.D.C. 2006)
459 F.Supp.2d 76 ..................................................................................................... 10

*Stand Up for California! v. State of California* (Cal.Ct.App. 2016)
211 Cal.Rptr.3d 490 ........................................................................................... passim

*Stand Up for California! v. United States Department of Interior* (D.D.C. September 6, 2016)
2016 WL 4621065, ___ F.Supp.3d ____ ............................................................. 9, 12

ii

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., SUITE 250
SACRAMENTO, CA

## TABLE OF AUTHORITIES

PAGE

## Statutes

5 U.S.C. § 706(2) ........................................................................................................... 11
25 U.S.C. § 2701 ............................................................................................................... 1
25 U.S.C § 2703(7) ........................................................................................................... 2
25 U.S.C § 2710(b) ........................................................................................................... 2
25 U.S.C § 2170(d)(7)(B)(v) ........................................................................................... 5
25 U.S.C. § 2703(6) ........................................................................................................... 2
25 U.S.C. § 2703(6)-(8) .................................................................................................... 2
25 U.S.C.§ 2703(8) ........................................................................................................... 3
25 U.S.C. § 2710(a) ........................................................................................................... 2
25 U.S.C. § 2710(d) ........................................................................................................... 3
25 U.S.C.§ 2710(d)(1)(A) ................................................................................................ 4
25 U.S.C. § 2710(d)(1)(B) ................................................................................................ 4
25 U.S.C. § 2710(d)(1)(C) ................................................................................................ 4
25 U.S.C. § 2710(d)(3) .................................................................................................... 16
25 U.S.C. § 2710(d)(7)(A)(i) ........................................................................................... 8
25 U.S.C. § 2710(d)(7)(A)(i)-(B)(i) ................................................................................ 4
25 U.S.C. § 2710(d)(7)(B) .............................................................................................. 14
25 U.S.C. § 2710(d)(7)(B)(i) ........................................................................................... 4
25 U.S.C. § 2710(d)(7)(B)(iv) ......................................................................................... 4
25 U.S.C. § 2710(d)(7)(B)(vi) ...................................................................................... 5, 8
25 U.S.C. § 2710(d)(7)(B)(vii) ........................................................................................ 5
25 U.S.C. § 2710(d)(7)(B)(vii)(II) ................................................................................. 15
25 U.S.C. § 2710(d)(8)(A)-(D) ........................................................................................ 4
25 U.S.C. § 2710(d)(B) .................................................................................................. 16
25 U.S.C. § 2719 ............................................................................................................. 15
25 U.S.C. § 2719(a) ............................................................................................... 1, 2, 3, 11
25 U.S.C. § 2719(a) & (b)(1)(A) ..................................................................................... 11
25 U.S.C. § 2719(b) ........................................................................................................... 3
25 U.S.C. § 2719(b)(1)(A) ........................................................................................ passim
25 U.S.C. 2719(b)(1)(B) .................................................................................................... 3

## Rules

Federal Rule of Civil Procedure 56 ................................................................................ 10

## Regulations

25 C.F.R. § 291 ............................................................................................................... 15
25 C.F.R. §292.23 ...................................................................................................... 13, 14
25 C.F.R. § 292.13-292.25 (2016) .................................................................................. 11
25 C.F.R. § 292.23(b)-(c) ............................................................................................... 14
25 C.F.R. § 292.23(c) ..................................................................................................... 14

iii

FREDERICKS PEEBLES
& MORGAN LLP
2020 L St., SUITE 250
SACRAMENTO, CA

**TABLE OF AUTHORITIES**

1

2                                                                                                          PAGE

3    <u>**Other Authorities**</u>

4
AB277 ................................................................................................................................. 7, 8
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., SUITE 250
SACRAMENTO, CA

TABLE OF AUTHORITIES

## I.   INTRODUCTION

This case involves a challenge to the effectiveness and validity of Secretarial Gaming Procedures issued pursuant to § 2710(d)(7)(B)(vii) of the Indian Gaming Regulatory Act (the "IGRA") 25 U.S.C. § 2701, et seq.

The Secretarial Procedures at issue arise from this Court's previous rulings in *North Fork Rancheria of Mono Indians of California v. State of California* ("*North Fork v. California*"), No. 15-cv-00419-AWI-SAB (E.D. Cal. November 13, 2015.)  The Secretarial Procedures, which purport to authorize the North Fork Rancheria of Mono Indians of California ("North Fork") to conduct class III gaming at a 305-acre parcel of land ("Madera Site") located far from North Forks primary reservation.  The Madera Site is land that North Fork acquired well after October 17, 1988, and as such is subject to the IGRA's general prohibition of gaming on lands acquired after that date.  25 U.S.C. § 2719(a).

In an effort to authorize gaming at the Madera Site, North Fork requested Secretary of the Interior to make a determination pursuant to § 2719(b)(1) of the IGRA that gaming at the Madera Site would be in the best interest of North Fork and its members and would not be detrimental to the surrounding community.  The Secretary made the requested determination and, as required by the IGRA that the Governor concurs in that determination – an act necessary for the Madera Parcel to qualify as gaming eligible lands.

Nearly a year after the Secretary made the request, the Governor sent a letter to Secretary indicating that Governor concurred in the Secretary's determination concerning the Madera Site.  However, under California law, the Governor had no legal authority to issue the concurrence.  Because the Governor's concurrence was invalid and ineffective, the Madera Site does not constitute land that is eligible for gaming under the IGRA.   As a consequence, Secretarial Procedures

FREDERICKS PEEBLES
& MORGAN LLP
2020 L St., STE 250
Sacramento CA 95811

purporting to authorize gaming at the Madera Site are contrary to law and have no legal force or effect.

## II.  BACKGROUND AND MATERIAL FACTS.

The facts relevant and material to this action are straight forward and are largely matters of public record.  As noted above, and discussed more fully below, this case involves a federally recognized Indian tribe's efforts to establish a tribal casino on lands acquired after October 17, 1988, and therefore generally ineligible for gaming pursuant the Indian Gaming Regulatory Act, 25 U.S.C. 2719(a).

### A. Regulation of Indian Gaming and Authorization of Indian Gaming in California.

In 1987, in the aftermath of *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), *Congress* enacted the IGRA to provide a statutory basis for the regulation of Indian gaming, dividing Indian gaming into three distinct classes subject to distinct levels of regulation.  25 U.S.C. § 2703(6)-(8).

Class I gaming consists of "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations.  25 U.S.C. § 2703(6).  Indian tribes have exclusive jurisdiction over Class I gaming, and such gaming is not subject to the provisions of the IGRA.   25 U.S.C. § 2710(a).

Class II gaming consists of bingo, and other similar games, and card games that are expressly authorized or not expressly prohibited by the State in which an Indian tribe conducting class II is situated and the card games are played in full conformity with the laws of the State.  25 U.S.C § 2703(7).  As with class I gaming, regulatory jurisdiction over class II gaming lies with the Indian tribe.  However, unlike class I gaming, class II gaming is subject to provisions of the IGRA.  25 U.S.C § 2710(b).

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA 95811

Class III gaming, the type of gaming at issue here, consists of all gaming activities that do not fall within the definitions of class I or class II gaming. Class III gaming is commonly referred to as "Vegas" style gaming because it includes the operation of slot machines and house-banked card games. 25 U.S.C.§ 2703(8). Class III gaming is subject to the full range of limitations set forth in the IGRA. 25 U.S.C. § 2710(d).

As an example, several requirements must be met before an Indian tribe may conduct class III gaming. First, as a general matter, the IGRA prohibits Class III gaming on Indian lands that an Indian tribe acquired after October 17, 1988 (hereinafter such lands will be referred to as "After-Acquired Lands"). 25 U.S.C. § 2719(a). This prohibition is subject to only very narrow exceptions. 25 U.S.C. § 2719(b). Thus, gaming can automatically occur on After-Acquired Lands taken into trust: (a) as part of the settlement of a land claim, (b) a finding that the land is part of the initial reservation of an Indian tribe recognized by the Secretary of Interior as part of the federal acknowledgment process, or (c) lands that are restored to an Indian tribe that is restored to federal recognition. 25 U.S.C. 2719(b)(1)(B).

In addition, After-Acquired Lands that do not meet the requirements listed immediately above may be converted to gaming lands through what is commonly called the Secretarial "two-part" process. 25 U.S.C. § 2719(b)(1)(A). To qualify as gaming lands under the "two-part" process the Secretary of Interior must consult with the Indian tribe and the appropriate state and local officials, including other nearby Indian tribes with regard to gaming on the After-Acquired Lands and make a specific determination that gaming on the After-Acquired Lands "would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community[.]" 25 U.S.C. § 2719(b)(1)(A). Even then, the lands can be qualified as gaming eligible only after the Governor "concurs" in the Secretary's determination. *Id.*

FREDERICKS PEEBLES
& MORGAN LLP
2020 L St., STE 250
SACRAMENTO, CA 95811

For lands that legally qualify as Indian lands, IGRA imposes other requirements before a tribe may conduct class III gaming activities. Under the IGRA, class III gaming activities must be specifically authorized by a tribal ordinance or resolution that satisfies specific requirements of the IGRA and is approved by the Chairman of the National Indian Gaming Commission ("NIGC"). 25 U.S.C.§ 2710(d)(1)(A). Second, a tribe can only conduct class III gaming activities if the State in which it is located "permits such gaming for any purpose by any person, organization or entity[.]" 25 U.S.C. § 2710(d)(1)(B). Further, a tribe may only conduct class III gaming after it has negotiated a Tribal-State gaming compact with the State in which the gaming lands are located. 25 U.S.C. § 2710(d)(1)(C). Finally, the compact must be approved by the Secretary of the Interior and notice of the compact must be published in the Federal Register. 25 U.S.C. § 2710(d)(8)(A)-(D).

As to lands that are legally and validly qualify as Indian lands, the IGRA requires a State to negotiate a Tribal-State compact in good faith and prohibits it from unreasonably restricting an Indian tribe's efforts to conduct class III gaming activities. If a State refuses to negotiate in good faith, the IGRA contains a detailed remedial scheme.

Under the IGRA's remedial scheme a State has 180 days after an Indian tribe makes a request to open negotiations on a Tribal-State compact. 25 U.S.C. § 2710(d)(7)(B)(i).   If the State refuses to negotiation or negotiates in bad-faith, the IGRA authorizes the Indian tribe to bring suit in federal district court to compel good faith negotiations. 25 U.S.C. § 2710(d)(7)(A)(i)-(B)(i).

If a State cannot prove that it negotiated in good faith, it is required to "order the state and Indian tribe to conclude a compact within sixty (60) days. If the Indian tribe and State fail to conclude a compact the IGRA provides for a mediation process during which the State and the Indian tribe submit their "last best offer for a compact[]" to a mediator selected by the parties. 25 U.S.C. § 2710(d)(7)(B)(iv). The IGRA tasks the mediator with selecting the proposed compact that "best

4

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA 95811

comports with the terms of [the IGRA] and any other applicable Federal law and with the findings and order of the court." *Id.*

After making her selection, the mediator is required to submit the chosen compact to the State and the Indian tribe. 25 U.S.C. § 2170(d)(7)(B)(v).   After that, the State has sixty (60) to consent to the compact chosen by the mediator. 25 U.S.C. § 2710(d)(7)(B)(vi).   If the State does not give its consent within the sixty-day period the mediator is required to notify the Secretary of Interior, and the Secretary is then required to prescribe, in consultation with the Indian tribe, procedures pursuant to which class III gaming may be conducted on gaming eligible lands over which the Indian tribe has jurisdiction.   25 U.S.C. § 2710(d)(7)(B)(vii).

### B.  Undisputed Material Facts

As an action under the APA, the Court's review is limited to those items in the Administrative Record.   As such, all the facts are arguably straight forward, undisputed, and a matter of public record.   Additionally, the vast majority of the facts relevant to this action are known to the Court and have been previously recited in the Courts several orders in *North Fork v. California, supra. See* Order On Cross-Motions For Judgment On The Pleadings, *North Fork v. California*, No. 15-cv-00419-AWI-SAB (E.D. Cal. November 13, 2015), ECF No. 25; *see also* Order Denying Putative Intervenor Defendant's Motion To Intervene, Order Requiring Briefing On Whether The Court Should Stay This Action, *North Fork v. California*, 2016 WL 3519245 (E.D. Cal. June 27, 2016), and Order Declining To Impose A Stay Of Judgment, *North Fork v. California*, 2016 WL 4208452 (E.D. Cal. August 10, 2016).   Nonetheless, despite the Court's familiarity with the facts and issues relating to this dispute, in conformity with the Local Rules Picayune will recite those facts relevant to the determination of this action.

In March 2005, the North Fork Rancheria requested that the United States take the Madera Site into trust with the specific purpose constructing a casino and conducting class III gaming.

(Undisputed Material Fact "UMF" No. 1, Administrative Record "AR" 00000160)[1]  The Madera Site is not on or near North Fork's established reservation or any of North Fork's other trust land. (AR00000166; AR00000245.) Rather, the Madera Site is approximately forty (40) miles west of North Fork's reservation and sites immediately adjacent to Highway 99, one of the major North-South freeways in California. (UMF 1; AR00000166.)

Because, the Madera Site is After-Acquired Land that did not qualify for any of the exemptions from the IGRA's gaming prohibition, North Fork requested that the Secretary of the Interior ("Secretary") make a determination pursuant to § 2719(b)(1)(A) of the IGRA, that gaming at the Madera Site would be in the best interests of North Fork and its members and not detrimental to the surrounding community (hereinafter the determination required pursuant to § 2719(b)(1)(A) will be referred to as the "Secretarial Determination"). (UMF 2; AR00000240)

On September 1, 2011, the Assistant Secretary-Indian Affairs issued a Secretarial Determination for the Madera Site.  In it the Assistant Secretary found that gaming at the Madera Site would be in the best interest of North Fork and its members.  (UMF 3; AR00000240-00000241; AR00000286-00000287.)  Additionally, the Assistant Secretary determined that gaming at the Madera Site would not be detrimental to the surrounding community.  (UMF 3, AR00000287-00000290.)  Accordingly, as required by § 2719(b)(1)(A)'s implementing regulations, on September 1, 2012, the Assistant Secretary forwarded the Secretarial Determination to the California Governor, Edmund G. Brown (hereinafter the "Governor" or "Governor Brown") and requested the Governor's concurrence.  (UMF 4, AR00000291.)

---

[1] Cases from this District indicate that use of a Separate Statement of Undisputed Material facts is redundant in cases such as this where the Court's factual inquiry is limited to review of the administrative record relating to final agency action. See, *Sequoia Forestkeeper v. Benson*, 108 F.Supp.3d 917, 923 (E.D. Cal. 2015).  Nonetheless, out of an abundance of caution, Picayune has utilized the Separate Statement required by Local Rule 260(a).  However, for ease of reference, Picayune will also identify evidence supporting material factual issues by reference to its location within the administrative record.

1    In addition to seeking to have the Madera Site taken into trust for gaming purposes, North

2    Fork also entered into negotiations with Governor Brown for a tribal-state gaming compact

3    specifically for the Madera Site.  Presumably, at the same time, North Fork was engaging in

4    discussions with Governor Brown regarding a concurrence in the Secretarial Determination.  On

5    August 31, 2012, the day before the Secretarial Determination expired as a matter of law, Governor

6    Brown purported to provide his concurrence.  (UMF 5; AR00000317-00000318, AR00000572-

7    00000573.)  On the same day, he purported to give his concurrence regarding the Secretarial

8    Determination concerning the Madera Site, Governor Brown also concluded a tribal-state compact

9    with North Fork that was also specific to the Madera Site ("2012 Compact.").  (UMF 6,

10   AR00000572-00000573.)

11

12   As required by California law, Governor Brown submitted the 2012 Compact to the

13   California legislature for ratification.  In July 2013, the California Legislature enacted AB277, a bill

14   to ratify the 2012 Compact.  (UMF 7; AR00000445-00000446).  However, as the Department of

15   Interior was informed, because the California Legislature did not pass AB277 as an "urgency statute"

16   AB277 did not go into immediate effect.  (UMF 8; AR00000439-00000440.)  Rather, under

17   California law, AB277 would not be effective until 90 days after it was enacted, to allow for the

18   possibility that that legislation may qualify for a referendum.  (UMF 8, AR00000439-00000440).

19

20   On November 20, 2013, a referendum on AB277 qualified for the November 4, 2014, ballot

21   in California's General Election.  (UMF 9; AR00000455.)  On November 4, 2014, California voters,

22   including voters in Madera County, resoundingly rejected the 2012 Compact 61 percent to 39

23   percent.  (UMF 10; See Administrative Record, p. 480)  As a consequence AB277 and the 2012

24   Compact never went into effect.

25

26   Despite the defeat of the 2012 Compact, North Fork demanded that the Governor and the

27   State of California either recognize its validity of the 2012 Compact or negotiate a new compact

28

authorizing gaming at the Madera Site. (UMF 11; AR00000311.) The Governor refused North Fork's requests, due to the results of the referendum on AB277 and the California voter's rejection of gaming at the Madera Site. (UMF 12; AR00000311.)

Due to the Governor's refusal to negotiate a compact for the Madera Site, North Fork instituted "bad-faith" litigation pursuant to § 2710(d)(7)(A)(i). (UMF 13; AR00000292-00000316.) On November 13, 2015, this Court granted judgment on the pleadings in favor of North Fork. (UMF 14; AR00000478-00000498.) Accordingly, the Court order directed North Fork to conclude a compact within 60 days of the date of the order. (UMF 14; AR00000498.)

California and North Fork were not able to conclude a compact within the required time period. Consequently, as required by the IGRA, and the Court's order, the matter was submitted to mediation. (UMF 15; AR00000001.) In the mediation, the mediator selected North Fork's last best offer of a compact as the proposal that best comported "with the terms of the IGRA, other applicable Federal law, and the findings and orders of the court." (UMF 16, AR00000002-00000003). Under the IGRA and the express terms of the selected compact, the compact could not become effective unless the State consented to the compact within sixty (60) days. 25 U.S.C. § 2710(d)(7)(B)(vi); AR p. 2). The Governor declined to consent to the proposed Compact. Therefore, on April 26, 2016, the mediator notified the Secretary as required by § 2710(d)(7)(B)(vii) of the IGRA. (UMF 17, AR00000001.)

After receiving the notice from the mediator, the Secretary, in consultation with North Fork, began preparation of the Secretarial Procedures at issue here. (AR00002186-00002188). On July 29, 2016, the Secretary notified North Fork and the State of California that it had prescribed procedures. (UMF 18; AR00002186-00002188.) The Procedures specifically purport to authority class III gaming at the Madera Site. (UMF 19; AR00002204.)

1    On December 12, 2016, the California Fifth Appellate District Court of Appeals issued an

2    order in *Stand Up v. California* in which the court expressly held that the Governor's concurrence in

3    the Secretarial Determination was invalid as a matter of California law. (UMF 20; *Stand Up for*

4    *California! v. State of California*, 211 Cal.Rptr.3d 490, 504 (Cal.Ct.App. 2016).

5        **C. Related Actions**:

6

7    After the Secretary of Interior took the Madera Site into trust but long before the Secretary

8    issued procedures purporting to authorize gaming at the Madera Site at three other actions filed by

9    various parties that directly pertain to North Fork's ability to conduct gaming at the Madera Site

10   remained pending. These actions include:

11       1. *Stand Up for California! v. U.S. Department of Interior*, Case No. 1:12-cv-02039-BAH,

12          (D.D.C. Dec. 19, 2012). An action challenging the Secretarial Decision for the Madera

13          Site and also challenging the Secretary's decision to take the Madera Site into trust.

14          *Picayune Rancheria of the Chukchansi Indians v. United States*, Case No. 1:12-cv-20171-

15          BAH (D.D.C. December 31, 2012). An action challenging the Secretarial Determination

16          for the Madera Site. These two case were consolidated.

17

18          On September 26, 2016, the District Court granted summary judgment in favor of the

19          United States and North Fork finding that under the APA the Secretary's decision to take

20          the land into trust and the Secretarial Determination were neither arbitrary or capricious or

21          contrary to law. *Stand Up for California! v. United States Department of Interior*, 2016

22          WL 4621065, *23, ___ F.Supp.3d ____ (D.D.C. September 6, 2016)

23

24       2. *Stand Up for California! v. State of California, et al.*, California Fifth District Court of

25          Appeal, Case Number F069302. An appeal from a Madera County Superior Court order

26          sustaining demurrers to Stand Up for California's complaint challenging the validity of

27          the Governor's concurrence in the Secretarial Determination for the Madera Site.

28

As discussed in some detail below, on December 12, 2016, the Fifth Appellate District issued a ruling in this case in which the Court determined that under California law, the Governor did not have legal authority to concur in the Secretarial Determination for the Madera Site. *Stand Up for California! v. State of California*, 211 Cal.Rptr.3d 490, 504 (Cal.Ct.App. 2016).

3. *Picayune Rancheria v. Brown*, Case No. MCV072004, (Madera County Superior Court, March 18, 2016.) A challenge to the validity of the Governor's concurrence in the Secretarial Determination. North Fork sought and allowed to intervene in this matter. The Madera County Superior Court sustained demurrers filed by North Fork and the Governor. However, on January 10, 2017, the Superior Court vacated its order sustaining the demurrers and placed the case back on the court's active docket.

### III.   LEGAL STANDARD

Because this case arises under the Administrative Procedures Act, the legal standard for summary judgment set forth in Federal Rule of Civil Procedure 56 is inapplicable, and the case does not turn whether there is an absence of genuine disputes concerning material facts. Rather, the facts are necessarily undisputed because the case is limited to those facts contained in the administrative record of the agency responsible for the challenged action. *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 89 (D.D.C. 2006). In such an action the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. *Id.* at 90. Consequently, in action such as this, summary judgment is the "mechanism for deciding as a matter of law if the governmental decision is supported by the administrative record and otherwise consistent with the APA standard of review." *Sequoia Forestkeeper v. Benson*, 108 F.Supp.3d 917, 923 (E.D. Cal. 2015). The district courts must set aside and hold unlawful "'agency actions, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion or

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA 95811

otherwise not in accordance with law,' or which have been taken 'without observance of procedure required by law.'" *County of Amador, California v. United States Department of the Interior*, 136 F.Supp.3d 1193, 1198 (E.D. Cal. 2015) (quoting 5 U.S.C. § 706(2).

## IV.   DISCUSSION

### A.  North Fork Cannot Legally Conduct Gaming at the Madera Site.

As discussed in section II above, the IGRA generally prohibits gaming on lands acquired after October 17, 1988.  25 U.S.C. §2719(a).  One exception to the IGRA's general prohibition of gaming on After-Acquired Lands is through the Secretarial "two-part" determination process set forth at 25 U.S.C. § 2719(b)(1)(A) and 25 C.F.R. § 292.13-292.25 (2016).  Under the "two-part" process gaming can occur on After-Acquired Lands if the Secretary of Interior  "after consultation with the Indian tribe and appropriate State and local official, including officials of nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, *but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination ...*" 25 U.S.C. § 2719(a) & (b)(1)(A).

As the IGRA makes clear, a valid gubernatorial concurrence is an absolute prerequisite to gaming eligibility of After-Acquired Lands.  Without a valid concurrence, the Secretary's determination that the land can and should be used for gaming is never given effect.  In other words, if the Governor's concurrence is not valid any designation of the subject land as gaming eligible is not valid.

Importantly, although federal law, in the form of the IGRA, creates the need for the concurrence, federal laws does not determine who within a State is authorized to grant the concurrence or the process through which a concurrence is granted.  Rather, the authority to concur, the processes related to a concurrence and the ultimate validity of a concurrence are all matters

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA 95811

determined under state law. *Confederated Tribes of Siletz Indians of Oregon v. United States*, 110 F.3d 688, 697; See also *Stand Up for California! v. United States Department of Interior* ("*Stand Up v. United States*"), 2016 WL 4621065, *23, ___ F.Supp.3d ____ (D.D.C. September 6, 2016) ("If the Governor lacks authority under state law to concur, the concurrence is invalid.".)

As the Ninth Circuit explained:

> When the Governor exercises authority under IGRA, the Governor is exercising state authority. If the Governor concurs, or refuses to concur, it is as a State executive, under the authority of state law. The concurrence (or lack thereof) is given effect under federal law, but the authority to act is provided by state law.

*Confederated Tribes of Siletz Indians of Oregon* ("*Siletz*"), 110 F.3d at 697 (9th Cir. 1997). Similarly, as the United States District Court for the District of Columbia opined in *Stand Up v. United States*, "if the Governor lacks authority under state law to concur, the concurrence is invalid." *Stand Up for California! v. United States*, 2016 WL 4621065, *23, ___ F.Supp.3d ____ (D.D.C. September 6, 2016)

Critically, on December 12, 2016, in a lengthy and thoroughly reasoned decision, California's Fifth Appellate District Court of Appeals specifically ruled that the Governor's concurrence in the Secretarial Determination concerning the Madera Site was invalid. *Stand Up v. California, supra*, 211 Cal.Rptr.3d 490, 504. There, all three Court of Appeals Judges agreed that the Governor's concurrence regarding the Madera Site was invalid. However, the Judges split on the issue of whether the Governor had any authority whatsoever in relation to granting a concurrence. Two Justices determined that the Governor had no authority at all to concur in the Secretarial Determination for the Madera Site, while the third Judge and author of the lead opinion made no clear determination of the concurrence power but determined if such authority existed under the California Constitution is must be directly tied to, and contingent upon, the existence of a state approved tribal-state gaming compact. See generally, *Stand Up v. California*, 211 Cal.Rptr.3d 490 – 559.

FREDERICKS PEEBLES
& MORGAN LLP
2020 L St., STE 250
SACRAMENTO, CA 95811

As Judge Smith stated in his lead opinion:

> [I]t would be perverse to find the Governor has an implied authority based on an express power that the state has finally decided not to exercise, after protracted consideration by the Governor, the Legislature, and the voters. It is no denigration of the Governor's authority to say that he cannot exercise an implied power in a case where the voters have vetoed an exercise of the express power on which the implied power is purportedly based.

*Stand Up v. California*, 211 Cal.Rptr.3d, at 500-501.

It is important to note that Justice Smith, like Justice Detjen and Justice Franson, ultimately rejected North Fork's and California's arguments that the Governor had inherent power to grant a concurrence regarding the Madera Site because in so doing the Governor was merely implementing existing state policy concerning gaming. As Justice Smith opined, "[t]here is no rule that the Governor has inherent authority to take any action he pleases in areas in which the state has an existing policy." *Stand Up. v. California,* 211 Cal.Rptr.3d, at 501-504.   Judge Smith's lead opinion notes that:

> [I]f the concurrence power exists, it is limited by the purposes of the state law in connection with which it would be exercised, that is, the purposes of Proposition 1A. Those purposes involve the legalization of gambling in casinos regulated by state-approved compacts, not those regulated by secretarial procedures imposed over the state's resistance. I think this limit would exist even if the Governor's power were supported by inherent executive authority. If a statute limits the power of the Governor, the Governor would not be entitled to exceed that limit based on the theory that the power is part of his inherent authority.

*Id.*, at 503.

As noted above, despite disagreeing as to whether the Governor had any power to concur all three, California Fifth Appellate District Court of Appeals Justices agreed that: "The Governor's concurrence [regarding the Madera Site] is invalid under the facts alleged in this case." *Stand Up. v. California*, 211 Cal.Rptr.3d, at 504.

Critically, absent a valid concurrence, gaming on After-Acquired Lands is categorically prohibited. 25 U.S.C. § 2719(b)(1)(A); 25 C.F.R. §292.23. Such is the case with regard to the Madera Site. The California Court of Appeals has unequivocally determined that Governor Brown's

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA 95811

purported concurrence in the Secretarial Determination for the Madera Site was invalid under California law. *Stand Up. v. California*, 211 Cal.Rptr.3d, at 504. Consequently, the Madera Site does not, and cannot, qualify as lands eligible for the conduct of either class II or class III gaming under the IGRA. 25 U.S.C. § 2719(b)(1)(A); 25 C.F.R. §292.23.[2]

**B. Secretarial Procedures for the Madera Site are Unlawful under Federal and California Law and Cannot Authorize Gaming at the Madera Site.**

The gaming procedures the Secretary issued on July 29, 2016, cannot lawfully authorize North Fork to conduct class III gaming at the Madera Site under any circumstances. As outlined above, due to the invalidity of Governor Brown's concurrence, the Madera Site does not qualify for any exemption from the IGRA's prohibition against gaming on After-Acquired Lands. The Secretarial procedures cannot and do not change the circumstances regarding the legal status of the Madera Site. Put another way, the Procedures cannot authorize what federal law and federal regulations prohibit.

As this Court is aware, the sole purpose of Secretarial Procedures is to authorize gaming on Indian lands when a state and tribe cannot agree on a tribal-state compact. 25 U.S.C. § 2710(d)(7)(B) As such, Secretarial procedures are available in only two situations: (1) when a State refuses to negotiate a Tribal-State Compact or employs bad faith tactics in negotiations, and an Indian tribe prevails in an IGRA "bad faith" action brought pursuant to 25 U.S.C. 2710(d)(7)(B); and (2) when a court dismisses an Indian tribe's IGRA "bad faith" action based on a state's assertion of sovereign

---

[2] In addition to negating the potential effectiveness of the "two-part" determination, the invalidity of Governor Brown's concurrence renders the "two-part" inoperative and no longer valid by operation of law. Pursuant to federal regulations an extension of time is granted Secretary must receive an affirmative concurrence within one year of the Secretary's request, otherwise the "Secretarial Determination will no longer be valid." 25 C.F.R. § 292.23(b)-(c). The Administrative Records shows that the Governor attempted to give a concurrence on August 30, 2012—one day before the Secretarial Determination expired. (AR00000317-00000318.) However, we now know that under California law, the Governor never had the authority to grant the concurrence. Consequently, because he legally could not, he did not, validly concur in the Secretarial Determination on or before September 1, 2012, and the thus under 25 C.F.R. § 292.23(c) the Secretarial Determination expired.

FREDERICKS PEEBLES & MORGAN LLP 2020 L St., STE 250 SACRAMENTO, CA 95811

immunity.  25 C.F.R. § 291.  The sole purpose of Secretarial Procedures is to authorize an Indian

tribe to conduct of class III gaming.  25 U.S.C. § 2710(d)(7)(B)(vii)(II).

Because of the very specific purpose of Secretarial Procedures, it is an essential prerequisite

that land as to which the Secretarial Procedures apply must satisfy the IGRA gaming eligibility

criteria before the Secretarial Procedures can be issued or become operative and effective.  *See* 25

U.S.C. § 2719.  As the Sixth Circuit has recognized a state does not have an obligation to negotiate

with regard to lands that are not eligible for gaming under the IGRA.  *Match-E-Be-Nash-She-Wish*

*Band of Pottawatomi Indians v. Engler*, 304 F.3d 616, 618 (6th Cir. 2002.)  As the Sixth Circuit

stated:

> The purposes of the requirement appear to be to ensure that the casino will be
> inside the borders of the State, to give the State notice of where it will be, and to
> require the tribe to have a place for a casino that that has been federally approved.
> *If the tribe does not have any land in the State that can be used for a casino, why*
> *should the State waste its time negotiating about such a casino?*

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 304 F.3d at 618. (emphasis added.)

Similarly, this District Court has likewise opined that having gaming eligible lands are a

prerequisite for a "bad faith" action under the IGRA.  In *Mechoopda Indian Tribe of Chico*

*Rancheria, Cal. v. Schwarzenegger*, 2004 WL 1103021 (March 12, 2004) ("*Mechoopda*")  District

Judge Shubb determined that having Indian lands is a prerequisite to an Indian tribe's ability to

compel compact negotiations, and therefore potentially obtain Secretarial Procedures as part of the

IGRA's remedial process. *Mechoopda*, 2004 WL 1103021, *7.  Moreover, the *Mechoopda* Court

implicitly recognized that merely having "Indian lands" would not be sufficient grounds for an IGRA

"bad faith" related to After-Acquired Lands unless those lands qualified for an exception under §

2719. *Id.* (noting that even if a tribe possesses "Indian land" as defined by the IGRA, the IGRA

prohibits gaming on lands acquired by the Secretary in trust for the benefit of the Indian tribe after

October 17, 1988.)

The crux of the issue is that an Indian tribe cannot compel a state to negotiate a compact pursuant to § 2710(d)(3) concerning land that is not eligible for gaming.  If they cannot properly compel a state to negotiate a compact, there is no legitimate path to the issuance of Secretarial Procedures.  25 U.S.C. § 2710(d)(B).

Without a doubt, as this Court recognized in *North Fork v. California*, *supra*, this controversy presents a somewhat unique situation.  *North Fork v. California*, 2016 WL  4208452, *6 (E.D. Cal. August 10, 2016) (recognizing that while at least five (5) other actions could dictate that North Fork's IGRA claims were not justiciable.)  At the time the Court rendered the decision which ultimately led to the issuance of Secretarial Procedures it appeared that the jurisdictional requirements for an IGRA "bad faith" action had been met.  *Id.*, at *11, n.5.  As Court stated: "This Court simply finds that at present, the Madera parcel *is* in trust for North Fork; the Governor *did* give his concurrence to the Secretary's two-part determination, and the State *refused* to recognize the validity of the 2012 Compact such that cannot be characterized as having been in effect." *Id.*

Despite finding that at the time North Fork filed its IGRA action all the jurisdictional requirements were met, the Court also expressly recognized that due to at least four different on-going legal actions related to the status of the Madera Site and the validity of the Governor's concurrence, it was possible that a decision in any one of those actions could erode the Court's jurisdiction or North Fork's standing to bring the IGRA bad faith litigation in the first instance.  *Id.*, at *8-*11.  Therefore, the Court briefly considered issuing a stay of proceedings in North Fork's IGRA action.  Ultimately, because at that time there was "sufficient information for the Court to conclude that North Fork had ... standing to litigate [the IGRA] action[], the potential for a decision in one of the actions that could erode North Fork's standing, and because the Secretary rushed to issue Procedures before a stay could be imposed the Court declined to issue a stay and terminated North Fork's IGRA action in its entirety.  *Id.*, at *12-*14

FREDERICKS PEEBLES
& MORGAN LLP
2020 L St., STE 250
SACRAMENTO, CA 95811

1    We now know that the Court was eminently justified in raising the concerns it did in *North*

2    *Fork*. As discussed above, on December 12, 2016, the California Fifth Appellate District Court of

3    Appeals, struck down the Governor's concurrence in the Secretarial Determination relating to the

4    Madera Site. *Stand Up. v. California*, *supra*, 211 Cal.Rptr.3d 490, 504. Because the Governor

5    lacked authority under California law to concur in the Secretarial Determination for the Madera Site

6    that determination was never given effect. *Siletz, supra*, 110 F.3d at 697; *see also Pueblo of Santa*

7    *Ana v. Kelly*, 104 F.3d 1546, 156-1558 (10th Cir. 1997), *cert. denied*, 522 U.S. 807, 119 S.Ct. 45, 139

8    L.Ed.2d 11 (1997) and *Kickapoo Tribe of Indians v. Babbitt*, 827 F.Supp. 37, 36 (D.D.C. 1993) (both

9    finding the IGRA related decisions made by a state Governor without authority under state law are

10   void.) As a consequence, the Madera Site cannot at this time be considered eligible for gaming under

11   the IGRA. Secretarial Procedures purporting to authorize gaming at the Madera Site are contrary to

12   federal and California law. Again, as stated above, the Secretary cannot authorize through Secretarial

13   Procedures what federal law prohibits.

14   

15   

16                    **V.    CONCLUSION**

17   For the reasons set forth above, namely that the Madera Site does not constitute gaming

18   eligible lands under the IGRA because the Governor did not have authority under California law to

19   concur in the Secretarial Determination for the Madera Site and that Secretarial Procedures are

20   contrary to law and cannot authorize class III gaming on ineligible lands, the Court should grant

21   summary judgment in favor of the Picayune Rancheria of Chukchansi Indians.

22   

23   ///

24   ///

25   ///

26   ///

27   ///

28   

FREDERICKS PEEBLES
& MORGAN LLP
2020 L ST., STE 250
SACRAMENTO, CA 95811

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    Dated: January 20, 2017                    Respectfully submitted,

2

3
                                               By: /s/ Michael A. Robinson
4                                                  Michael A. Robinson
                                                   FREDERICKS PEEBLES & MORGAN LLP
5                                                  2020 L Street, Suite 250
                                                   Sacramento, CA  95811
6                                                  Telephone:  916-441-2700
                                                   Facsimile:  916-441-2067
7

8                                                  *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREDERICKS PEEBLES
& MORGAN LLP
2020 L St., STE 250
Sacramento, CA 95811