JEFFREY H. WOOD
Acting Assistant Attorney General

JOSEPH NATHANAEL WATSON (Georgia State Bar No. 212038)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Indian Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: (303) 844-1348
Facsimile: (303) 844-1350
Joseph.Watson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF INTERIOR, et al.,

Defendants;

NORTH FORK RANCHERIA OF MONO INDIANS,

Intervenor Defendant.

Case No. 1:16-cv-00950-AWI-EPG

**FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Date: May 30, 2017
Time: 1:30 p.m.
Court: 2, 8th Floor
Judge: Honorable Anthony W. Ishii

## TABLE OF CONTENTS

ARGUMENT……………………………………………………………..……………....2

I. COLLATERAL ESTOPPEL AND RES JUDICATA BAR PICAYUNE'S CLAIMS……………………………………………………………..……………3

II. PICAYUNE HAS ABANDONED CLAIMS I, II, III, IV, V, AND VII…………………4

A. CLAIMS I, II, AND III ARE ABANDONED……………………………………4

B. CLAIMS IV AND V ARE ABANDONED………………………………………5

C. CLAIM VII IS ABANDONED…………………………………………………...5

III. PICAYUNE'S ARGUMENTS REGARDING THE SECRETARIAL PROCEDURES ALL FAIL AS A MATTER OF LAW…………………………………5

A. ISSUANCE OF SECRETRIAL PROCEDURES WAS LAWFUL………………7

1. The IGRA Mandates Procedures……………………………………………7

2. Picayune Conflates the Two-Part Determination with the IGRA's Remedial Process; the Governor's Concurrence is not Relevant to the Secretarial Procedures……………………………………………………10

3. Even if the California Courts Rule Against the Governor of California, the Secretarial Procedures are Valid……………………………………..11

B. THERE IS NO REQUIREMENT TO PUBLISH NOTICE OF THE SECRETARIAL PROCEDURES IN THE FEDERAL REGISTER TO MAKE THE PROCEDURES EFFECTIVE……………………………………..16

IV. A STAY IS IMPROPER……………………………………………………………18

CONCLUSION……………………………………………………………………………..18

## TABLE OF AUTHORITIES

*Cases*

*Anderson v. Yungkau*, 329 U.S. 482, (1947)........ 7

*Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794 (9th Cir. 1980) ........ 12

*BankAmerica Pension Plan v. McMath*, 206 F.3d 821 (9th Cir. 2000)........ 4

*Big Lagoon Rancheria v. California*, 789 F.3d 947 (9th Cir. 2015)........ 10, 11

*Confederated Tribes of Siletz Indians of Oregon v. United States*, 110 F.3d 688 (9th Cir. 1997)........ 14, 15

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Servs.*, 450 F.3d 930 (9th Cir. 2006)........ 12, 13

*Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443 (9th Cir. 1996)........ 12

*Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256 (9th Cir. 2000)..... 14

*Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)........ 7

*Lopez v. Davis*, 531 U.S. 230 (2001) ........ 7

*North Fork of Rancheria of Mono Indians of California v. State of California*, No. 15-cv-00419-AWI-SAB, 2015 WL 11438206, (E. D. Cal. Nov. 3, 2015)........ 1, 2, 10, 17

*Omaha Tribe of Nebraska v. Vill. of Walthill*, 334 F. Supp. 823 (D. Neb. 1971) ........ 15

*Picayune Rancheria of Chukchansi Indians v. U.S. Dep't of the Interior*, No. CV-16-5327 (D.C. Cir. Mar. 14, 2017)........1

*Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284 (D.N.M. 1996)........ 16

*Ramirez v. City of Buena Park*, 560 F.3d 1012 (9th Cir. 2009)........ 4

*Rincon Band of Luiseno Mission Indians of Rincon Reservations v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010)........................................................................................... 13, 15

*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 624 F. Supp.2d 1197 (E.D. Cal. 2009)............................................................................................................ 12

*Serv. Emps. Int'l Union. v. United States*, 598 F.3d 1110 (9th Cir. 2010) .................................... 7

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443 (9th Cir. 1996)…………12

*Stand Up for California! v. U.S. Dep't of the Interior, 204 F. Supp. 3d 212* (D.D.C. 2016).. 1, 2, 3

*United States v. Backlund*, 689 F.3d 986 (9th Cir. 2012) .......................................................... 10

*United States v. Lawrence*, 595 F.2d 1149 (9th Cir. 1979) ........................................................ 14

*United States v. Monsanto*, 491 U.S. 600 (1989)............................................................................ 8

*Statutes*

25 U.S.C. § 2702........................................................................................................................ 15

25 U.S.C. § 2710(d)(7) ............................................................................................ 6, 7, 8, 10, 16

*Regulations*

25 C.F.R. § 291.1 ........................................................................................................... 6, 19, 20

25 C.F.R. § 291.13 ...................................................................................................................... 17

64 Fed. Reg. 17,535-36 (April 12, 1999)…………………………………………………...17

Picayune Rancheria of Chukchansi Indians (Picayune) has opted, instead of responding to Federal Defendants' res judicata and collateral estoppel arguments, to raise new arguments and issues that were not briefed in its opening memorandum. These new arguments, like those Picayune raised in the first suit it filed in 2012, and later lost, those it advanced in its failed attempt to intervene in North Fork Rancheria of Mono Indians' good faith suit pursuant to the Indian Gaming Regulatory Act's (IGRA) remedial provisions against California, and in its opening memorandum, lack merit, even if they are not barred by collateral estoppel and res judicata.

Picayune's response and reply focuses almost entirely on the effect of the Governor's concurrence upon the Secretarial Procedures. 32 of the 36 pages of the response and reply are devoted to the Governor's concurrence. Picayune's challenge to the issuance of Secretarial Procedures is collaterally estopped because it cannot relitigate its claims, already litigated and decided in *Stand Up for California! v U.S. Dep't of the Interior*, 204 F. Supp. 3d 212, 247 n. 16, 254 (D.D.C. 2016) (*Stand Up III*). The issues are identical: Picayune made this clear when it copied and pasted portions of its opening brief in this case into its brief on the appeal of its loss in the District of Columbia.[1] Res judicata and claim preclusion alone are sufficient to reject every claim that Picayune has not abandoned.

Picayune has abandoned arguments made in its opening brief in order to pursue a new argument against IGRA's mandate that the Secretary prescribe procedures as a result of this Court's order in *North Fork of Rancheria of Mono Indians of California v. State of California*

[1] *Compare* Pl.'s Mem. P. & A. in Supp. of Mot. for Summ. J., Doc. 19, at 19, (Pl.'s Mem.) *with* Br. for Pl.-Appellant Picayune Rancheria of Chukchansi Indians, *Picayune Rancheria of Chukchansi Indians v. U.S. Dep't of the Interior*, Doc. 1666008 at 52, No. CV-16-5327 (D.C. Cir. Mar. 14, 2017) (D.C. Cir. Br.); *see* Fed. Defs.' Mem. in Supp. of Mot. for Summ. J., Doc. 29 at 14-15.

No. 15-cv-00419-AWI-SAB, 2015 WL 11438206, (E. D. Cal. Nov. 3, 2015) (*North Fork*). Even if Picayune's unabandoned claims are not barred by res judicata, Federal Defendants are entitled to summary judgment for other reasons. Picayune is improperly attempting to challenge the validity of the Governor's concurrence with new information that post-dates the administrative record for the Secretarial Procedures. In any event, Picayune's claims fail on the merits because issuance of the Secretarial Procedures was mandated by the IGRA. Picayune now, for the first time, contends that the mandatory issuance of the Secretarial Procedures is unlawful because the Secretary failed to consider the Governor's concurrence and publish notice of the Secretarial Procedures in the Federal Register. Regardless of whether these arguments are waived because they were first raised in a response and reply brief, there is no provision in IGRA that requires the Secretary to consider the validity of the Governor's concurrence. Picayune's argument is primarily an attempt to relitigate two cases, *North Fork v. California* and *Stand Up.*

This Court should enter summary judgment for the Federal Defendants' because Picayune's claims are 1) barred by collateral estoppel and res judicata; and 2) fail as a matter of federal law.

**ARGUMENT**

Picayune's claims would fail on the merits, but for the fact they are barred by res judicata and collateral estoppel and therefore cannot be relitigated. Moreover, Picayune has abandoned six of its eight claims. Federal Defendants reiterate that although the Court should decide this case on the basis of preclusion, that does not in any way indicate that Picayune's claims do not also fail as a matter of law, as explained below.

## I. COLLATERAL ESTOPPEL AND RES JUDICATA BAR PICAYUNE'S CLAIMS

Picayune did not respond to Federal Defendants' arguments that it is collaterally estopped from relitigating claims that assert the Governor's concurrence was invalid. Likewise, Picayune did not respond to Federal Defendants' arguments that res judicata applies to some of its claims. The sum total of Picayune's response was that neither doctrine "applies in this case at this point." *Picayune Combined Opp'n. and Reply* (Pls.' Reply) Doc. 33 at 10. No explanation is given for Picayune's conclusory assertion. Notwithstanding that each of Picayune's claims are reliant upon its assertion that the Governor's concurrence is invalid, Picayune has offered no argument to contest the fact that the judgment in *Stand Up*, 204 F. Supp. 3d at 247 n. 16, 254, bars those claims. Picayune does not even offer an excuse for attempting to relitigate this issue again. This Court should determine that Picayune is collaterally estopped from relitigating the validity of the Governor's concurrence and dismiss all of Picayune's claims.

The argument advanced by Picayune that is most related, if only tangentially, to the issues of res judicata and claim preclusion is its argument that this Court should follow a case that was before the California's Fifth Appellate District Court, Pls.' Reply at 10, even though the United States is not a party to that case. That case concerns a lawsuit against the Governor of California and the validity of his concurrence in the Secretary's two-part determination under state law; it is currently on appeal. As a matter of state law, the Fifth Appellate District's decision is *not* in effect while the California Supreme Court reviews the rule. Cal. Rules of Court, rule 8.1115(e). It is important to note that the Governor of California is not a party to this case and in *Stand Up* the Court ruled that in a challenge to the Governor's concurrence, the Governor is a necessary and indispensable party, pursuant to Rule 19. *Stand Up*, 204 F. Supp. 3d at 252-54. Picayune is collaterally estopped from relitigating that issue and, in fact, is actively

litigating that issue in the D.C. Circuit. Picayune cannot use this Court to relitigate the same issue.

### II. PICAYUNE HAS ABANDONED CLAIMS I, II, III, IV, V, AND VII

Picayune has abandoned all but Claims VI and VIII. "[I]t is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment." *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000). "A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *Id.*; *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009). Summary judgment should be entered for the Federal Defendants on Claims I, II, III, IV, V, and VII.

#### A. CLAIMS I, II, AND III ARE ABANDONED

Picayune claims that it did not raise Claims I, II, and III: "Picayune did not seek summary judgment on its first through third causes of action." Pls.' Reply at 10. The Federal Defendants, however, did seek summary judgment on those claims. Fed. Defs.' Mem. at 19-24, 30-33, 45-46. Given that Picayune has failed to defend those claims the Court should grant Federal Defendants' motion for summary judgment on Claims I-III.

Picayune does, however, assert that another Court, California's Fifth Appellate District Court of Appeal, has "decided those issues." Pls. Reply at 10. Picayune's assertion is not supported by law or fact. Federal Defendants are not bound by that case because it does not decide whether Picayune is entitled to relief on *federal* claims against the Secretary. Moreover, as a matter of state law, the Fifth Appellate District's decision is not in effect while the California Supreme Court reviews the rule. Cal. Rules of Court, rule 8.1115(e).

### B. CLAIMS IV AND V ARE ABANDONED

Federal Defendants asked this Court to enter summary judgment in their favor on Picayune's Fourth Claim, which asserted that the Secretarial two-part determination was no longer effective, Fed. Defs.' Mem. at 27-30, 33-35, and Picayune's Fifth Claim, which asserted that the Madera Site does not constitute "Indian Lands". Picayune has not responded except to recharacterize Claims IV and V as "relating to the effectiveness of the secretarial procedures." Pls.' Reply at 10. In fact, Picayune's First Amended Complaint styles Claim IV as relating to the "Invalidity of the Secretarial Determination under IGRA" and does not even mention the Secretarial Procedures. Am. Compl., Doc. 5, ¶¶ 74-78. Claim V is styled "Indians Land Status," and it too fails to discuss Secretarial Procedures. *Id.* at ¶¶ 79-85. Federal Defendants argued that these claims were barred by res judicata, failed on the merits, and that Claim V failed to challenge any agency action. Picayune did not respond to any of these arguments and has, therefore, abandoned the claims.

### C. CLAIM VII IS ABANDONED

Federal Defendants could not identify any discussion of Claim VII, which challenges Class II (as opposed to Class III) gaming, in Picayune's briefing. Federal Defendants asserted that Claim VII failed to challenge a final agency action and failed on the merits. Fed. Defs.' Mem. at 36-37. Claim VII is abandoned.

## III. PICAYUNE'S ARGUMENTS REGARDING THE SECRETARIAL PROCEDURES ALL FAIL AS A MATTER OF LAW

Picayune has presented three new arguments challenging the Secretarial Procedures. These arguments are waived, having been raised for the first time in Picayune's response and reply. Nevertheless, even if these arguments are not waived, they fail as a matter of law. First, Picayune contends that the Secretarial Procedures are invalid because the Secretary failed to

consider and/or explain consideration of the validity of the Governor's concurrence under California law. The IGRA imposes no such requirement upon the Secretary. The IGRA mandates the Secretary prescribe procedures and Picayune patently conflates different portions of the IGRA when it bootstraps the Governor's concurrence into discussions regarding Secretarial Procedures. While the argument that the Secretarial Procedures are unlawful on the basis of this ground does not appear to be raised in Picayune's memorandum in support of its motion for summary judgment, it is addressed here, in the event Picayune did not waive this argument. Second, Picayune contends that the Secretary should have considered state court decisions issued after the Secretary followed the IGRA's mandate to prescribe procedures. The Fifth District's decision, which followed the Secretary's prescription of procedures, has no effect on the validity of the Secretary's decision. Moreover, these decisions, which Picayune claims invalidate the Secretary's decision, occurred even after Picayune filed its amended complaint. This argument is therefore waived. Third, and finally, Picayune contends that the Secretary was required to publish notice of the Secretarial Procedures to make them effective. Picayune did not include this argument in its complaint or opening brief. Moreover, the argument relies upon a regulation that does not apply here. By its terms, the regulation only applies when a "State and an Indian tribe are unable to voluntarily agree to a compact" *and* the "State has asserted its immunity from suit brought by an Indian tribe under 25 U.S.C. § 2710(d)(7)(B)." 25 C.F.R. § 291.1. Here, California had waived its sovereign immunity from such suits.

This reply first addresses Picayune's two new arguments, regarding the Governor's concurrence and the state court opinion post-dating the issuance of procedures, together. It then addresses Picayune's reinterpretation of the Secretary's own regulations.

### A. ISSUANCE OF SECRETRIAL PROCEDURES WAS LAWFUL

Even if Picayune's arguments that the Secretary was required to consider state law issues related to the Governor's concurrence, including materials which post-dated the issuance of Procedures, are not waived, the arguments fail on the merits for several reasons: 1) Picayune conflates the IGRA's requirements concerning the content and scope of procedures with IGRA's mandate to prescribe procedures; 2) Picayune conflates the IGRA's remedial process related to good faith compact negotiations with the two-part determination related to the gaming eligibility of after acquired trust lands; and 3) Picayune assumes, incorrectly, that the California State Court decisions have any relevance —even if they ultimately rule against the Governor.

#### 1. The IGRA Mandates Procedures

The IGRA's remedial process mandates the issuance of Secretarial Procedures in this case. The IGRA's command that "the Secretary *shall prescribe* . . . procedures," 25 U.S.C. 2710(d)(7)(viii). (emphasis added), is mandatory if the IGRA's remedial process has failed to result in a tribal-state compact. *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress used 'shall' to impose discretionless obligations"); *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . creates an obligation impervious to . . . discretion.") (citation omitted) *Black's Law Dictionary*, at 1375 (6th ed. 1990) ("As used in statutes . . . [shall] is generally imperative or mandatory.") "The word 'shall' is ordinarily '[t]he language of command.'" *Serv. Emps. Int'l Union. v. United States*, 598 F.3d 1110, 1113 (9th Cir. 2010) (quoting *Anderson v. Yungkau*, 329 U.S. 482, 485, (1947)). The use of "shall" here is not merely cajoling, it is commanding. To be sure, not every "shall" is a term of command. But here, by using the word "shall" in the context in which it appears, "Congress could not have chosen stronger words to express its intent that [the specified action] be mandatory in cases

where the statute applied." *United States v. Monsanto*, 491 U.S. 600, 607 (1989). The IGRA's mandate simply left no room for discretion as to whether Secretarial Procedures are issued and, as a result, Picayune's argument is foreclosed.

Picayune's response to the IGRA's mandate, however, is to reinterpret the IGRA, specifically the language that applies to the scope and content of the procedures to be prescribed pursuant to the IGRA's mandate. Picayune doesn't have any beef with the content of the procedures—it nowhere challenges the content—but whether they should have been issued. Picayune's complaint cannot be squared with the language of the statute, which makes clear that the Secretary "shall" prescribe procedures, and then describes the role of the Secretary with regard to the scope and content of the procedures:

> "the Secretary shall prescribe, in consultation with the Indian tribe, procedures—
>
> (I) which are consistent with the proposed compact selected by the mediator under clause (iv), the provisions of this chapter, and the relevant provisions of the laws of the State, and
>
> (II) under which class III gaming may be conducted on the Indian lands over which the Indian tribe has jurisdiction."

25 U.S.C. § 2710(d)(7)(B)(vii). Picayune asserts that this language requires the Secretary "to consider state law issues when prescribing procedures." Pls.' Reply at 22. There is no provision which requires the Secretary to consider state law issues in connection with whether procedures *can* be issued (they are mandated to be issued.) Instead, relevant provisions of State law are pertinent with regard to the content of the procedures.

Picayune grasps at the IGRA's description of "procedures which are consistent with . . . relevant provisions of the laws of the State," but its reading of this statutory provision is not consistent with the statute's plain text, for several reasons. First, its proposed interpretation is internally inconsistent, incoherent, and at odds with the plain language of the statute. Instead of

accepting "relevant provisions of the laws of the State" at face value, Picayune redefines "relevant" with an antonym, claiming that "relevant" means "broad and open-ended." *Id.* That is not what relevant means and Picayune can offer no authority to support such a subversive reading of the statute. The dictionary defines relevant as "having significant and demonstrable bearing on the matter at hand." Merriam-Webster Dictionary (2016). The definition is a far cry from "broad and open-ended," because Picayune's reading is in opposition to the statute's plain language and purpose. Picayune's reading also excises the word "provisions" from the text, which further indicates that the "relevant provisions of state laws" is not nearly as "broad and open-ended" as Picayune contends.

The language relied upon by Picayune requires that the "procedures," which set forth the conditions by which class III gaming may be conducted in the absence of a compact, be consistent with the relevant provisions of state laws. Again, Picayune makes no allegations that the procedures themselves are inconsistent with the laws of California which, under the IGRA, inform the scope and nature of class III gaming. 25 U.S.C. § 2710 (d)(1)(B). Instead, Picayune attempts to rewrite the IGRA's language, changing "relevant provisions of state laws" to "broad and open-ended laws of the state," and expanding "provisions of state laws" to include judicial rulings that are on appeal and occurred after the Secretary prescribed the Secretarial Procedures. Picayune does so for the proposition that, despite this Court's final judgment and the submission of a compact by the Mediator, the Secretary could not issue procedures at all. Picayune cites no support, in case law or legislative history, for its interpretation, and Picayune's approach is flatly inconsistent with the IGRA.

The Secretary did, contrary to Picayune's assertions, consider the *relevant* provisions of state laws, i.e., those laws having significant and demonstrable bearing on the matter at hand, and

stated that the Secretarial Procedures would be "consistent with the State's regulatory role in Class III gaming under numerous existing compacts with tribes in the State." AR2187. Picayune's complaint and memorandum are void of any allegations that the Secretarial Procedures are inconsistent with any provision of state law that is actually relevant to what the procedures actually govern—the scope and conditions of gaming. Picayune's argument reads into the IGRA a requirement that simply does not exist. It does so in order to re-raise its objections to the Governor's concurrence in yet a third forum (first in the District of Columbia, second, in its failed attempt to intervene in *North Fork v. State*, and third, in this case).

Picayune's argument ignores the function of the Secretarial Procedures in the IGRA's remedial process. The procedures exist to set forth "the conditions under class III gaming may be conducted in lieu of a compact." *American Indian Law Deskbook* § 12.30 (2017). The Secretary considered the relevant state law and found that the Secretarial Procedures are "consistent with the State's regulatory role in Class III gaming under numerous existing compacts with tribes in the State." AR2187. "Under IGRA, these Secretarial Procedures are properly viewed as a full substitute for a Class III gaming compact[.]" AR2295. Simply put Picayune seeks to impose requirements beyond what is required of gaming compacts or substituting secretarial procedures. Picayune's argument must be rejected.

**2. Picayune Conflates the Two-Part Determination with the IGRA's Remedial Process; the Governor's Concurrence is not Relevant to the Secretarial Procedures**

"[P]arties cannot 'use a collateral proceeding to end-run the procedural requirements governing appeals of administrative decisions.'" *Big Lagoon Rancheria v. California*, 789 F.3d 947, 953 (9th Cir. 2015) (quoting *United States v. Backlund*, 689 F.3d 986, 1000 (9th Cir. 2012)). In *Big Lagoon*, a good-faith action brought by a tribe pursuant to the IGRA's remedial

provisions, the State of California attempted to challenge the Secretary's land-into-trust determination and the tribe's status as a federally recognized Indian tribe. The Ninth Circuit ruled against California because "[a]llowing California to attack collaterally the BIA's decision to take the eleven-acre parcel into trust outside the APA would constitute just the sort of end-run that we have previously refused to allow . . . ." *Id.* at 954. Here, Picayune complaint uses the Governor's concurrence in the Secretarial two-part determination to attack the Secretary's mandatory issuance of Secretarial Procedures. Picayune is attempting to bootstrap one administrative decision that is wholly separate from the Secretarial Procedures, to attack the issuance of the Secretarial Procedures. Picayune cannot use collateral attacks on the Governor's concurrence with the Secretary's two-part determination to undermine the operation of the IGRA's remedial provisions. Picayune's attempts to do exactly this, Pls.' Reply. at 24-27, are transparent and not supported by the law.

Picayune's attempt to tie the Secretarial Procedures to the Secretary's earlier two-part determination and decision to acquire the Madera Site in trust for North Fork should be rejected. The Secretarial Procedures are distinct from the two-part determination. AR2188. Picayune has already challenged, and is appealing the district court's decision regarding, the Secretary's two-part determination. Picayune's claims challenging the status of the Madera Site as Indian lands (Claims VI, VII, and VIII), are exactly the type of "end run" that is not allowed. Again, another Court has examined Picayune's claims regarding the Secretary's two-part determination, ruled in favor of Federal Defendants and North Fork, and Picayune is appealing that decision. Picayune should not be allowed to relitigate the issue in a different forum.

**3. Even if the California Courts Rule Against the Governor of California, the Secretarial Procedures are Valid**

As explained in the Federal Defendants' opening memorandum, the legal status of the Governor's concurrence under state law is irrelevant. There are three points which Federal Defendants raise in response to Picayune's new arguments: a) Picayune is not entitled to attack the validity of the Secretarial Procedures with materials that post-date their issuance; b) there is no private right of action to challenge the Secretarial Procedures; and c) the Secretary was entitled to rely on the Governor's facially valid concurrence.

a) Picayune is not entitled to attack the validity of the Secretarial Procedures with materials that post-date their issuance

Picayune cannot use a state-court decision issued in December of 2016 to challenge the Secretarial Procedures issued in July of 2016. A reviewing court must review the administrative record before the agency at the time the agency made its decision. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *see also San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 624 F. Supp.2d 1197, 1212 (E.D. Cal. 2009) (holding that subsequent state appellate court decisions could not be considered in a case challenging prior agency actions).

Picayune's argument that the record should be supplemented with materials that post-date the issuance of the Secretarial Procedures lacks merit. The sole authority cited by Picayune, Pls.' Reply at 33, eviscerates its argument, holding that "[p]arties may not use 'post-decision information as a new rationalization either for sustaining or attacking the Agency's decision.'" *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Servs.*, 450 F.3d 930, 943 (9th Cir. 2006) (quoting *Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811-12 (9th Cir. 1980). In that case, "a party offered extra-record documents, including a letter dated a month after the agency decision was completed, arguing that they should be admitted to analyze 'whether the Forest Service [had] considered all of the relevant factors' in its decision." *Ctr. for Biological Diversity at 944.*

(citations omitted). The Court held that "post-decision information 'may not be advanced as a new rationalization . . . for attacking an agency's decision." *Id.* Here, Picayune argues that "extra record materials" should be considered to "determine whether the agency has considered all of the relevant factors and has explained its decision," Pls.' Reply at 33, even though the materials post-date the record. Its actions are indistinguishable from the behavior rejected in *Ctr. for Biological Diversity*, cited by Picayune as binding authority. This Court should reject Picayune's attempt to subvert established precedent and the administrative record.

Additionally, Picayune complains that the Secretary prescribed the procedures when there was "no deadline for approving Secretarial Procedures." Pls.' Reply at 27. The Secretary reviewed the compact submitted by the mediator for more than 90 days before prescribing procedures. AR 2186. Picayune's unfounded accusation is that somehow this is a demonstration of bad faith. Pls.' Br. at 33. Picayune offers no credible basis for its assertion and there is no cognizable claim (Picayune does not even assert one) for relief related to Picayune's indulgence in a baseless and desperate accusation. While the APA does allow some lawsuits for unreasonable delay, it does not provide a waiver of sovereign immunity to sue a government agency for timely compliance with a statute's mandatory duty. Picayune is not entitled to relief merely because it wishes the Secretary had waited longer. Moreover, the remedial provision is not designed to be an unnecessarily lengthy process. As the Ninth Circuit itself has held "the structure and content of § 2710(d) make clear that the function of the good faith requirement and judicial remedy is to permit the tribe to process gaming arrangements on an expedited basis." *Rincon Band of Luiseno Mission Indians of Rincon Reservations v. Schwarzenegger*, 602 F.3d 1019, 1041 (9th Cir. 2010).

b) There is no private right of action to challenge Secretarial Procedures

The Secretary was entitled to rely on the Governor's facially valid concurrence for all the reasons explained in his opening memorandum. Fed. Defs.' Mem. at 35-40. Picayune's response and reply does not identify any "general private right of action" in the IGRA that would allow it to challenge the Secretarial Procedures, and it is unlikely that Picayune could because "where IGRA creates a private cause of action, it does so explicitly." *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000). Picayune's claims simply do not tie its newest argument to any private right of action or APA claim.

To the extent Picayune seeks a declaration that the Secretarial Procedures are now invalid because of the Fifth District Court decision, it has failed to challenge a final agency action and therefor lacks a cause of action. The continuing validity of the Secretarial Procedures is not a final agency action subject to review under the APA.

c) The Secretary was entitled to rely on the Governor's facially valid concurrence

Federal Defendants are entitled to summary judgment because the Secretary was not required by the IGRA, or any other federal statute, to make a determination whether the Governor's facially valid concurrence was valid as a matter of California law. Federal law does not require federal officials to look behind the actions of state officials to determine whether those officials complied with state law. In *United States v. Lawrence*, the Ninth Circuit held that the Secretary was entitled to rely upon actions by the Governor of Washington "whether or not the Governor's proclamation was valid under Washington law." 595 F.2d 1149, 1151 (9th Cir. 1979) (citation omitted).

Picayune attempts to distinguish the retrocession cases by relying upon a misreading of *Confederated Tribes of Siletz Indians of Oregon v. United States* (*Siletz*), 110 F.3d 688 (9th Cir. 1997). That case involved the question of whether the IGRA's concurrence provision violated

the Appointments Clause. The Ninth Circuit held that "[t]he gubernatorial concurrence provision similarly meets the restrictions of the Appointments Clause. The Governor's authority under IGRA extends only to making a single determination—which is unlikely to arise often in a particular state." *Id.* at 698. Here, the Governor made a determination. Picayune's argument is that the Governor's concurrence was invalid under state law. If so, that is a state law issue. In *Omaha Tribe of Nebraska v. Vill. of Walthill*, 334 F. Supp. 823 (D. Neb. 1971), the Court held that "[i[f the elected representatives . . . acted beyond their power in sending the Secretary of Interior a notice offering a retrocession of jurisdiction over certain Indian country, then they must answer to the people of the state for their negligence." *Id.* at 832. The Governor's action, whether it is valid or not under state law, does not lie against the Secretary.

As discussed above, the Governor's concurrence in a trust land gaming-eligibility determination is not a "relevant provision of state law" applicable to Secretarial Procedures intended to substitute for a gaming compact. Nevertheless, Picayune characterizes IGRA's purpose as "protecting state interests concerning gaming within their territories." Pls.' Reply at 28. The purposes of the IGRA encompass are far more than this state-centric view. The IGRA "provide[s] a legal framework within which tribes could engage in gaming . . . while setting boundaries to restrain aggression by powerful states." *Rincon Band*, 602 F.3d at 1027. The State interests mentioned in 25 U.S.C. § 2702 "are protecting against organized crime and ensuring that gaming is conducted fairly and honestly." *Id.* at 1034. Here, California has already consented to class III gaming on Indian reservations. The Secretarial Procedures do not alter or amend the scope and nature of gaming in California.

Picayune also explains one view of the differences between Public Law 280 (addressed by retrocession cases) and the IGRA. This misses the mark. The similarity between the

retrocession cases and the Secretary's reliance on a facially valid concurrence is most obvious because of the similarities in the type of concurrence sought from the Governor. To the extent Picayune fears a "rogue governor," Pls.' Reply at 29, its remedy is political, or jurisprudential, against the Governor of the State, not the Secretary. It would be a perverse result to suggest that the Secretary must exercise federal power to restrain the Governor of California from potentially violating California law. Instead, like in the retrocession cases, the Secretary is entitled to rely on a facially valid gubernatorial concurrence.

Likewise, Picayune's reliance on *Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1291 (D.N.M. 1996), *aff'd*, 104 F.3d 1546 (10th Cir. 1997), as a means of attacking the Governor's concurrence, is misplaced. That case involved a tribal-state gaming compact, rather than Secretarial Procedures and a Governor's concurrence in a two-part determination. Compacts impose "affirmative duties upon the state," *Pueblo of Santa Ana*, 104 F.3d at 1296, while the Secretarial Procedures do not impose any affirmative duties on the State of California unless California voluntarily agrees to them. AR2187-2188, AR2245. Unlike the state in *Pueblo of Santa Ana*, the State of California unambiguously authorizes the type of gaming described in the Secretarial Procedures.

**B. THERE IS NO REQUIREMENT TO PUBLISH NOTICE OF THE SECRETARIAL PROCEDURES IN THE FEDERAL REGISTER TO MAKE THE PROCEDURES EFFECTIVE**

Picayune, relying on 25 C.F.R. § 291.1, contends that the "Secretary's decision to put the North Fork Procedures into effect without publishing notice in the Federal Register was arbitrary and capricious." Pls.' Reply at 39-42. The regulation is not cited in Picayune's opening memorandum nor its First Amended Complaint. Nor does the regulation apply here.

The 25 C.F.R. Part 291 regulations apply only when "[a] State and an Indian tribe are unable to voluntarily agree to a compact and; [ ] [t]he State has asserted its immunity from suit brought by an Indian tribe under 25 U.S.C. 2710(d)(7)(B)." 25 C.F.R. § 291.1. When issuing this regulation, Interior explained it was promulgated "to reflect the unavailability of tribal access to [a] Federal court where a State refuses to waive sovereign immunity." Class III Gaming Procedures, 64 Fed. Reg. 17,535-36 (Apr. 12, 1999). In such cases, the statutory process laid out in the IGRA applies. *Id.* ("Instead, the negotiation and mediation process set forth in section 2710(d)(7) of IGRA would" apply.) The provision cited by Picayune, 25 C.F.R. § 291.13, applies to "Class III gaming procedures for the Indian tribe under either § 291.8(b), § 291.8(c), or § 291.11(a)," and not Secretarial Procedures under the IGRA's remedial process. Here, the State of California waived sovereign immunity, *North Fork*, 2015 WL 11438206, at *6, so the Part 291 regulations applicable only when a state has not waived sovereign immunity, are of no relevance here.

Picayune also argues that "if Part 291 did not apply to the instant case," then the Secretary was somehow obligated to provide "supporting citation or rational justification." Pls.' Reply at 34. Picayune should have reviewed the appropriate Federal Register notice before asserting this argument. *See* 64 Fed. Reg. 17,535-02 (Apr. 12, 1999). That regulation, and the plain text of 25 C.F.R. § 291.1, make clear why these regulations are inapplicable here.

Finally, Picayune speculates that the Secretary "may have [made] an intentional effort to prevent this Court from ordering interim relief against the issuance/effectiveness of the Procedures. Pls.' Reply at 41. There was no irregular process. The Secretary prescribed the Secretarial Procedures together with a Secretarial letter explaining the Secretary's reasoning. AR2186-2188. The letter and procedures were published on the Department of the Interior's

website. Lawrence Roberts, Acting Assistant Secretary for Indian Affairs, U.S. Dep't of Interior, to Maryann McGovran, Chairwoman, North Fork Rancheria of Mono Indians of California (July 29, 2016), https://www.indianaffairs.gov/cs/groups/xasia/documents/text/idc2-056230.pdf. Picayune alleges that the Secretary somehow departed from precedent, but has provided no example of how the Secretary departed from any regulation, statutory requirement, or any other authority. Even if Picayune's arguments on this point are not waived, they lack merit, and Federal Defendants are entitled to summary judgment.

## IV. A STAY IS IMPROPER

To the extent Picayune believes Federal Defendants believe "a stay of this action is appropriate," Pls.' Reply at 9, it is mistaken. A stay is inappropriate and Picayune's claims should be dismissed. A stay is only appropriate if this Court determines that resolving the claims raised in this case requires it to adjudicate whether the Governor's concurrence is valid as a matter of California law. Picayune's claims, however, do not require that determination because they are precluded and, even if they are not, they fail on the merits.

## CONCLUSION

Federal Defendants respectfully request that this Court grant their motion for summary judgment and deny Picayune's motion for summary judgment.

DATED this 25th day of May, 2017.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General

/s/ Joseph Nathanael Watson
JOSEPH NATHANAEL WATSON
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division

Indian Resources Section

Of Counsel:
ANDREW S. CAULUM
Office of the Solicitor – Division of Indian Affairs
United States Department of the Interior
WI No. 1023019

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 25, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel reflected on the Notice of Electronic Filing to be served by electronic means.