1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **EASTERN DISTRICT OF CALIFORNIA**

11

12 PICAYUNE RANCHERIA OF
CHUKCHANSI INDIANS

13                          Plaintiff,

14        v.

15 UNITED STATES DEPARMENT OF THE
16 INTERIOR; SALLY JEWELL, Secretary of
the Interior; and LAWRENCE S.
17 ROBERTS, Acting Assistant Secretary of
the Interior for Indian Affairs,

18                          Defendants.

19

**CASE NO. 1:16-CV-0950-AWI-EPG**

**ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT**

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

20                          **I. Introduction**

21        The Picayune Rancheria of Chukchansi Indians ("Picayune") initiated this action July 1,

22 2016. Picayune filed an amended complaint on August 16, 2016, alleging eight causes of action

23 against the Department of the Interior, aimed at preventing gaming activity on a 305.49 acre

24 parcel of land in Madera County, California (the "Madera Site"), held in trust by the United

25 States of America for the North Fork Rancheria of Mono Indians ("North Fork"). Doc. 5.

26 Picayune's causes of action all share a common thread: each depends (at least in part) upon the

27 validity of the Governor of California's (the "Governor") concurrence with the Secretary of the

28 Interior's (the "Secretary") so-called "two-part" determination—that "a gaming establishment on

newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community." *See* 25 U.S.C. § 2719(b)(1)(A); Doc. 5 at ¶¶ 54, 55-57, 67-68, 70-73, 77-78, 81-82, 84, 90, 96-100, 102.

The parties have filed cross-motions for summary judgment. The matter is now fully briefed. For the following reasons, Defendants' motions for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.

## II. Background

"North Fork a is federally-recognized Indian tribe located in Madera County, California…." North Fork's Separate Statement of Undisputed Facts, Doc. 27 ("NFSSUF") at 1; Federal Defendants' Separate Statement of Undisputed Facts, Doc. 30 ("FDSSUF") at 1; *see* Indian Entities Recognized…, 81 Fed.Reg. 26826, 26829 (May 4, 2016). This action is one in a series of actions surrounding the proposed construction and operation of a hotel and class III casino by North Fork at the Madera Site, which is held in trust by the Secretary of the Interior on behalf of North Fork. Undisputed Material Fact, Docs. 20, 27, 30 ("UMF") at 1. Picayune is also a federally-recognized Indian tribe in Madera County, California. *See* 81 Fed. Reg.26826, 26829. Picayune operates the "Chukchansi Gold Resort and Casino, a Class III gaming facility, on its Rancheria lands at Coarsegold, California, approximately 26.4 miles from the Madera [Site]." First Amended Complaint, Doc. 5 ("FAC") at ¶ 11. Picayune seeks to prevent North Fork from developing a casino at the Madera Site.

## A. Madera Site Acquisition and Fee-to-Trust History

In approximately 2004, North Fork purchased the Madera [Site], just north of the city of Madera and west of California State Highway 99. On March 1, 2005, North Fork submitted a fee-to-trust application to the DOI, requesting that the DOI take the Madera [Site] into trust for the benefit of the tribe pursuant to the Indian Reorganization Act ("IRA"). [*See* UMF at 1.] The application was supplemented on or about March 29, 2006, with a request for a two-part determination[FN] pursuant to 25 U.S.C. § 2719(b)(1)(A). [*See* UMF at 2; NFSSUF at 3.] An Environmental Impact Study ("EIS") was undertaken and the results were published on August 6, 2010. "After reviewing the results of the EIS, the submissions of state and local officials and surrounding Indian tribes, and the likely economic impact on North Fork and the surrounding communities, the Assistant Secretary of Indian Affairs [made an affirmative two-part determination,

finding that gaming on the Madera Site would be in the best interest of North Fork and would not be detrimental to the surrounding community.] As a result, he recommended approval of (and requested the California Governor's concurrence [in]) [North Fork's] bid for acquisition … [of the]Madera [Site] [in trust by the United States] for the benefit of North Fork pursuant to the [IRA] in anticipation of North Fork's construction of a class III gaming facility as contemplated by" the Indian Gaming Regulatory Act ("IGRA"). [*See* UMF at 2-4.] On August 30, 2012, Governor Brown issued a letter purporting to concur in the Secretary's two-part determination. [UMF at 5.] On February 5, 2013, the United States took the Madera parcel into trust for North Fork. [NFSSUF at 5.]

> [FN] The two-part determination of § 2719(b)(1)(A) provides an exception to the general prohibition on class III gaming on lands acquired after October 17, 1988, by asking if gaming on the newly acquired lands is in the best interest of the Indian tribe and its members, and if such gaming would be non-detrimental to the surrounding community. The two-part determination requires an affirmative finding on both questions by the Secretary of the Interior and concurrence by the Governor of the State in which the gaming activity is to be conducted.

Doc. 15 at 2.

**B. Tribal-State Compact History**

In order for a Native American tribe to conduct class III gaming on Indian land the tribe must enter into a tribal-state compact with the State where the gaming is to be conducted. *See* 25 U.S.C. § 2710(d)(1)(C). "On August 31, 2012, the Governor announced that he had concluded a compact with North Fork authorizing gaming at the Madera Site [(the "2012 Compact")]." UMF at 6. However, "[t]he California Constitution provides that such a compact is not effective until it is "ratified in accordance with State law…." Doc. 15 at 3 (citing Cal. Const., art. IV, § 19(f)). "The Governor submitted the 2012 Compact to the California Legislature …." UMF at 7. "On June 27, 2013, the California legislature passed Assembly Bill No. 277 ("AB 277"), ratifying the 2012 [C]ompact." Doc. 15 at 3; *see* SUF at 7. "The Governor signed AB 277 on July 3, 2013 and it was filed with the California Secretary of State." Doc. 15 at 3. The then-Secretary of State, Deborah Bowen, forwarded the compact to United States Secretary of the Interior,[1] as required by California Government Code section 12012.25(f), for review and approval pursuant to 25 U.S.C. § 2710(d)(8). *See* SUF at 8. In the letter accompanying the executed compact, dated July

---

[1] The letter attached to the compact was addressed to Ms. Paula Hart, Director of the Office of Indian Gaming, an office operating under the Department of the Interior. AR at 00439.

16, 2013, then-Secretary Bowen explained "a statute enacted at a regular session … go[es] into effect on January 1 next following a 90-day period from the date of enactment of the statute. Th[at] delayed effective date provides adequate time for … [operation of the] referendum process." Administrative Record ("AR") at 00439[2], also located at *Stand Up for California v. Dept. of Interior*, 1:12-cv-2039-BAM, Doc. 129-10 at 1-2; *see* UMF at 8.

"On October 22, 2013, the Assistant Secretary of the Interior, Bureau of Indian Affairs, issued notice that the compact between the State and North Fork was approved (to the extent that it was consistent with IGRA)." Doc. 15 at 3 (citing Notice of Tribal-State Class III Gaming Compact taking effect, 78 FR 62649-01 (Oct. 22, 2013)).

> On July 19, 2013, a ballot summary and title were issued by the Attorney General of California's office for what would be commonly known as California Proposition 48 – Referendum on Indian Gaming Compacts (2014). On October 1, 2013, proponents of the referendum submitted 784,571 signatures from registered voters in support of placing Proposition 48 on the ballot for the November 2014 election. The then-Secretary of State, Debra Bowen, certified that the signatures submitted contained a sufficient number of valid signatures to place the matter on the ballot. *See* Cal. Const., art. II, § 9(b).

Doc. 15 at 3. On November 20, 2013, California Secretary of State Bowen, informed the Department of Interior that a referendum qualified regarding AB277 and therefore the "statute[] implementing the" 2012 Compact was "stayed" under California law until after the referendum vote on November 4, 2014. AR 00455; UMF at 9. On November 4, 2014, California voters voted on Proposition 48. Roughly sixty-one percent of voters voted against the ratification of the 2012 Compact. UMF at 10.

On January 2, 2015, North Fork requested that California negotiate a new compact for class III gaming on the Madera Site. UMF at 11. The Governor refused to recognize the 2012 Compact and refused to negotiate a new compact for the Madera Site, indicating that such negotiations would be futile in light of the outcome of the referendum. *See* UMF at 12; AR at 00313.

///

---

[2] The Administrative Record was lodged in compact disk format with the Court. *See* Doc. 18.

1   ///

2   ///

3   **C. Related Actions[3]**

4                    *1. Good Faith Negotiation Action and Secretarial Procedures*

5          On March 17, 2015, North Fork initiated an action against the State of California to

6   compel the state to negotiate a new tribal-state compact in good faith. UMF at 13; *North Fork*

7   *Rancheria of Mono Indians of California v. State of California*, E.D.C.A. No. 1:15-cv-419-AWI-

8   SAB, Doc. 1 (E.D. Cal. Mar. 17, 2015) ("Good Faith Litigation"). "On November 13, 2015, this

9   Court granted North Fork's motion for judgment on the pleadings and ordered North Fork and

10  California to conclude a compact for the Madera Site within sixty (60) days." UMF at 14; *Good*

11  *Faith Litigation*, 2015 WL 11438206 (E.D. Cal. Nov. 13, 2015); 25 U.S.C. § 2710(d)(7)(A),

12  (d)(7)(B). North Fork and California were unable to negotiate and conclude a compact within the

13  60-day period. UMF at 15; *Good Faith Litigation*, Doc. 27 at 1 (E.D. Cal. Jan 15, 2016). This

14  Court appointed a mediator, directed the parties to submit their last best offers for a compact to

15  the mediator, and directed the mediator to select from the two proposed compacts the one which

16  best comports with the terms of [IGRA], … any other applicable Federal law[,] and with the

17  findings and order (Doc. 25) of th[is] [C]ourt." *Id.*, Doc. 30 at 1 (E.D. Cal. Jan. 26, 2016); *see* 25

18  U.S.C. § 2710(d)(7)(B)(iv). The mediator selected North Fork's compact and submitted the

19  compact to North Fork and California. UMF at 16; *see* 25 U.S.C. §2710(d)(7)(B)(v). California

20  did not consent to the compact within 60-days of the compact having been submitted to it. UMF

21  at 17. The mediator informed the Secretary of the Interior that California did not consent to the

22  selected compact. UMF at 17; *see* 25 U.S.C. § 2710(d)(7)(B)(vii). "On July 29, 2016, the

23  Secretary of the Interior notified North Fork and California that it had issued Secretarial

24  Procedures for the purpose of authorizing class III gaming at the Madera Site." UMF at 18.

25                              *2. District of Columbia Action*

26          On December 10, 2012, Stand Up for California! filed an action against the Secretary of

27  the Interior, bringing APA, IRA, IGRA, National Environmental Policy Act ("NEPA"), and

28  
_____
[3] The following is not an exhaustive list of the actions related to the proposed casino at the Madera Site.

Clean Air Act ("CAA") challenges to the Secretary's two-part, fee-to-trust, and environmental impact determinations regarding proposed gaming at the Madera Site. *Stand Up for California! v. Dept. of the Interior*, No. 1:12-cv-2039-BAH, Doc. 1 (D.D.C. Dec. 10, 2012); *see also Id.*, Stand Up's Third Amended Complaint, Doc. 103 (Dec. 3, 2014). On December 31, 2012, Picayune filed a similar action against the Secretary regarding the Madera Site. *See Picayune Rancheria of the Chukchansi Indians v. United States*, No. 1:12-cv-2071-BAH, Doc. 1 (D.D.C. Dec. 31, 2012). In that action, Picayune alleged, among other things, that the "Assistant Secretary [of the Interior] violated the APA, IGRA, and the IRA by relying on a purported concurrence from the Governor of California that is ultra vires and invalid under California law." *Id.*, Doc. 1 at ¶ 57.

On January 9, 2013, the District of Columbia district court consolidated the *Stand Up* and *Picayune* actions. *Stand Up for California! v. Dept. of the Interior*, 1:12-cv-2039-BAH, Minute Entry (Jan. 9, 2013). The parties filed cross-motions for summary judgment in early 2015. *Id.*, Docs. 106, 108, 111-117, 121, 122. The District of Columbia district court ordered additional briefing on the question of whether the State of California was required to be joined under Federal Rule of Civil Procedure 19. *Id.*, Doc. 135 (Sept. 30, 2015).

While the cross-motions for summary judgment were under submission, the Secretary "prescribed the secretarial procedures mandated by IGRA," as a result of the Good Faith Negotiation Action before this Court. *Id.*, Docs. 163, 163-1; *Stand Up for California ! v. Dept. of the Interior*, 204 F.Supp.3d at 240 ("On July 29, 2016, Lawrence S. Roberts, Acting Assistant Secretary of Indian Affairs, notified the North Fork Tribe and the State of California that, after reviewing the mediator's compact submission, 'procedures under which the [North Fork Tribe] may conduct Class III gaming consistent with IGRA' had been issued and, thus, 'Secretarial Procedures for the conduct of Class III gaming on the Tribe's Indian lands are prescribed and in effect.'") (citation omitted, alteration in original).

On September 6, 2016, United States District Court for the District of Columbia dismissed Picayune and Stand Up's claims premised on the invalidity of the Governor's concurrence, concluding that the State of California was an indispensable party. *Stand Up for*

*California! v. Dept. of the Interior*, 204 F.Supp.3d at 253-254. The court further dismissed the claims premised upon the invalidity of the 2012 Compact as moot in light of the issuance of Secretarial procedures. *See Id*. at 248. As to all other of Picayune and Stand Up's IGRA, IRA, APA, NEPA, and CAA claims, the court granted summary judgment in favor of the Secretary and North Fork. *Id.* at 323.

### 3. California Fifth District Court of Appeal Gubernatorial Concurrence Action

> In March of 2013, Stand Up filed suit in the Madera County Superior Court, contending that the Governor lacked the authority under California law to concur in the Secretary of the Interior's two-part determination. *Stand Up for California v State of California et al*., 5th DCA Case No. F069302. The Madera County Superior Court held that the Governor's authority to concur with the Secretary's determination is implicit in the Governor's authority to negotiate and conclude Tribal-State compacts on behalf of the state. *Id*. Stand Up appealed.

*Good Faith Litigation III*, Order Declining to Impose a Stay of Judgment, 2016 WL 4208452, *3 (E.D. Cal. Aug. 16, 2016). The Fifth District Court of Appeal issued a decision on December 16, 2016, in three separate opinions, reversing the judgment of the trial court and holding that the Governor's concurrence was invalid under state law. *Stand Up for California! v. State of California*, 6 Cal.App.5th 686 (Cal. Ct. App. Dec. 16, 2016). Several months earlier, the California Third District Court of Appeal issued a decision on a similar question regarding a different Indian tribe, determining that the Governor's concurrence with a two-part determination by the Secretary is an executive (rather than legislative) power and therefore within the authority of the Governor. *United Auburn Indian Community of Auburn Rancheria v. Brown*, 4 Cal.App.5th 36 (Cal. Ct. App. Oct 13, 2016).

In light of the apparent disagreement, the California Supreme Court has granted review of *Stand Up for California! v. State of California* and *United Auburn*. *See Stand Up for California! v. State of California*, 390 P.3d 781 (Mar. 22, 2017) (granting review and deferring consideration pending resolution of *United Auburn*); *United Auburn*, 387 P.3d 741 (Jan. 25, 2017) (granting review). Both actions remain pending.

### III. Legal Standard

Any party may move for summary judgment, and the Court shall grant summary

7

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. United States*., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz*., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. *Johnson v. Poway Unified Sch. Dist*., 658 F.3d 954, 960 (9th Cir. 2011). A plaintiff bears the burden of proof at trial, and to prevail on summary judgment, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the plaintiff. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial or in moving for summary judgment, they need only prove an absence of evidence to support the plaintiff's case. *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, *Soremekun*, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

### IV. Discussion

Picayune's causes of action, the first seven of which are characterized as claims for declaratory relief, are summarized as follows: (1) the Governor lacked the authority under state law to concur in the Secretary's two-part determination; (2) Assembly Bill 277 could not have

retroactively ratified the Governor's concurrence because it never took effect; (3) the Governor's concurrence never took effect because it was conditioned on exceptional circumstances which never occurred; (4) the two-part determination lapsed one year after it was made because the Governor's concurrence was not valid; (5) because the Governor's concurrence was invalid, the Madera Site is not Indian lands upon which gaming can be conducted under IGRA; (6) because the Governor's concurrence was invalid and because the 2012 Compact was in effect, issuance of secretarial procedures for conducting class III gaming on the Madera Site was inconsistent with IGRA; (7) because the Governor's concurrence is invalid, class II gaming cannot be conducted on the Madera Site; and (8) the Secretary violated IGRA and the APA by implementing secretarial procedures for gaming on the Madera Site because the land was not Indian land (because the Governor's concurrence was invalid) and because the 2012 Compact was in effect.

**A. Stay of Proceedings**

All parties have identified the prospect of staying this action in light of California state court actions regarding class III gaming on the Madera Site. Docs. 26 at 43-47, 29 at 46, 33 at 9. Specifically, North Fork and the Secretary suggest that, if the Court finds it necessary to consider questions of California law regarding the Governor's concurrence, this Court should stay this action until the California Supreme Court resolves the California Gubernatorial Concurrence action. Docs. 26 at 43-37, Doc. 29 at 46. Although Picayune "believes that the Court can" resolve the Administrative Procedures Act ("APA") questions now before it, Picayune also suggests that "a stay may be appropriate until the California Supreme Court rules in *Stand Up v. State*." Doc. 33 at 9.

As Picayune correctly notes in its complaint, the validity of the "Governor's concurrence in a favorable Secretarial two-part determination" is a question of "state law." Doc. 5 at 81; *Confederated Tribes of Siletz Indians of Oregon v. United States*, 110 F.3d 688, 697 (9th Cir. 1997) ("If the Governor concurs, or refuses to concur, it is as a State executive, under the authority of state law. The concurrence (or lack thereof) is given effect under federal law, but the authority to act is provided by state law.") Indeed, that exact question of state law is now directly

before the California Supreme Court. *Stand Up for California! v. State of California*, 6 Cal.App.5th 686 (Cal. Ct. App. 2016) *rev. granted* 215 Cal.Rptr.3d 2 (Mar. 22, 2017); *United Auburn Indian Community of the Auburn Rancheria v. Brown*, 4 Cal.App.5th 36 (Cal. Ct. App. 2016) *rev. granted* 212 Cal.Rptr.3d 620 (Jan. 25, 2017) ("*United Auburn*").

A substantial portion of the argument on the merits implicates the question of California law now firmly before the California Supreme Court. However, the Secretary and North Fork both raise procedural defenses, namely res judicata, collateral estoppel, and failure to join an indispensable party (to wit, the state of California), as well as merits based arguments involving only federal law.

In discussing the propriety of a stay, the parties disagree on the standard to be applied. Picayune relies on *Landis v. North American Co.*, 299 U.S. 248 (1936) while North Fork and the Federal Defendants argue that *Colorado River Water Conversation District v. United States*, 424 U.S. 800 (1976), controls. This Court has questioned the applicability of *Landis* in governing whether a district court should stay a federal action pending the resolution of a concurrent state court proceeding. *Abrahamson v. Berkley*, 2016 WL 8673060, *19 n. 14 (E.D. Cal. Sept. 2, 2016). Although this Court did not resolve the question and the Ninth Circuit has not spoken directly to the question, the Tenth Circuit and other district courts in the Circuit have held that the standard articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"), governs whether a federal court should stay in favor of a state court proceeding. *See Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004); *Martin v. Minuteman Press Int., Inc.*, 2016 WL 4524885, *2 (E.D. Cal. Aug. 30, 2016); *see also Colorado River*, 424 U.S. at 817-818 (contrasting the policy of judicial conservation and avoidance of duplicating litigation existing between federal district courts presiding over overlapping actions and the "virtually unflagging obligation of federal courts to exercise jurisdiction" over actions where concurrent state court proceedings exist).

For the reasons discussed in Sections IV(B) and IV(C), the Court need not resolve the appropriate standard for stay of the action based on the California Gubernatorial Concurrence action because all of Picayune's claims before this Court fail on questions of federal law, for

reasons wholly divorced from the questions now before the California Supreme Court.[4]

**B. Defendants' Former Adjudication Defenses**

North Fork and the Federal Defendants present several former-adjudication-based defenses based on the preclusive effect of the District of Columbia action: (1) Picayune is issue precluded from re-litigating whether California is an indispensable party for claims that "in any way involve[] the Governor's concurrence," *see* Doc. 26 at 21-24, Doc. 29 at 24, and (2) Picayune is claim precluded from litigating its fourth claim—a declaration that the Secretary's two-part determination lapsed when the Governor failed to give a valid concurrence within one year of the determination, Doc. 26 at 30-31, Doc. 29 at 27-28. The Court need only resolve the issue preclusion question.

*1. Issue Preclusion*

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude litigation of the issue in a suit on a different cause of action involving a party to the first case." *Hydranautics v. Film Tec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (quoting *Dodd v. Hood River Country*, 59 F.3d 852, 863 (9th Cir. 1995)); *accord New Hampshire v. Maine*, 532 U.S. 742, 748-749 (2001). Issue preclusion applies where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be re-litigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Hydranautics*, 204 F.3d at 885 (quoting, *inter alia*, *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996)); *accord B&B Hardware, Inc. v. Hargis Indus., Inc.*, --- U.S. ----, 135 S.Ct. 1293, 1303 (2015) (Issue preclusion only applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.") Re-litigation of an issue in a second action may be precluded even if it does not arise in the same context in the second action that it did in the first. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

---

[4] For the first time in its supplemental briefing, Picayune suggests that the Court may stay this action until the District of Columbia Circuit Court can resolve the appeal in the District of Columbia action. Doc. 41 at 4. The Court declines to stay this action pending resolution of the District of Columbia action.

North Fork and the Federal Defendants contend that (1) the district court in the District of Columbia action, to which Picayune was a party, held in its summary judgment order that the State of California was in indispensable party with regard to any cause of action challenging the validity of the Governor's concurrence, (2) all of Picayune's causes of action in this action are dependent on the invalidity of the Governor's concurrence, and accordingly (3) this action must be dismissed because Picayune is collaterally estopped from re-litigating the question of whether California is an indispensable party. *See* Doc. 26 at 21-24. Picayune responds that Defendants "misuse *res judicata* and collateral estoppel"; Picayune argues that neither doctrine is applicable because the underlying question—the validity of the Governor's concurrence—"has been conclusively decided by California's Fifth Appellate District Court of Appeal." Doc. 33 at 10.

The district court in the District of Columbia action expressly held that Picayune's "claims [that] in any way involve[] the Governor's concurrence must be dismissed due to the absence of an indispensable party," namely the State of California. *Stand Up for California! v. United States Dept. of the Interior*, 204 F.Supp.3d 212, 254 (D.D.C. 2016). Each of Picayune's causes of action—except a portion of the sixth and eighth causes of action[5]—are dependent on the Governor's concurrence having been ineffective. The question of whether the State of California is a necessary party in an action that challenges the Governor's concurrence power is the same in both actions. Picayune does not disagree.

In the District of Columbia action, Picayune asserted "as part of its [s]econd [c]ause of [a]ction that … '[the] purported concurrence from the Governor [with the Secretary's two-part determination]… [was] ultra vires and invalid under California law.'" *Stand Up*, 204 F.Supp.3d at 247 n.16 (citation omitted). In response, North Fork and the Federal Defendants sought summary judgment based, in part, on the absence of California as an indispensable party within the meaning of Rule 19. The district court granted summary judgment for the defendants for two independently sufficient reasons: because the State of California was an indispensable party to

---

[5] Picayune argues in part that Secretarial procedures are invalid because "North Fork['s] 2012 Compact was in effect pursuant to IGRA." Compl. at ¶¶ 89, 102. Insofar as Picayune contends in its sixth and eighth causes of action that prescription of secretarial procedures was in error because a tribal-state compact was in effect between North Fork and California, it does not amount to a challenge of the Governor's authority to concur.

any claim where the Governor's authority to concur is at issue, *Stand Up*, 204 F.Supp.3d at 251-254, and because Picayune abandoned its claims regarding the Governor's concurrence, *Stand Up*, 204 F.Supp.3d at 247 n.16. Under Ninth Circuit law,[6] alternative bases for a holding on an issue that must be resolved are both entitled to issue preclusive effect. *In re Westgate-Cal. Corp.*, 642 F.2d 1174, 1176-77 (9th Cir. 1981) (following the "established rule" that estoppel applies even where a court "rests its judgment alternatively upon two or more grounds"); *see Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357 (Fed Cir. 2017); *see also Jones v. Kirchner*, 835 F.3d 74, 96 n.8 (D.C. Cir. 2016) (rejecting the suggestion that "neither of two alternative bases for a holding can estop a party from re-litigating an issue in a future action"). The District of Columbia district court's conclusion that California is an indispensable party was actually litigated and necessarily decided at summary judgment.

The District of Columbia district court granted summary judgment, completely disposing of all claims before that court and terminating the action. Despite the pending appeal, a district court's issuance of summary judgment resolving all claims is final judgment for purposes of issue preclusion. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988); *accord Whitehurst v. CVS Pharmacy*, --- Fed.Appx. ----, 2017 WL 1420248, *1 (9th Cir. Apr. 21, 2017); *see Bever v. Quality Loan Service Corp.*, 2016 WL 1267578, *4 (E.D. Cal. Mar. 31, 2016).

An involuntary dismissal for failure to join an indispensable party is not a resolution on the merits of any of the underlying claims. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) [ (dealing with effect of involuntary dismissal) ]—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.") However, as is well understood:

> this only means that "the dismissal permits a second action on the same claim that corrects the deficiency found in the first action"; that is, "[t]he judgment remains

---

[6] The prior adjudication relied upon for preclusive effect raised questions of federal law in federal court. As a result, federal issue preclusion law applies. *Taylor*, 553 U.S. at 891 (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-508 (2001)). Although there is a split of authority at the Circuit court level regarding whether alternative bases for a holding are entitled to issue preclusive effect, Ninth Circuit and District of Columbia Circuit both agree that such determinations are entitled to issue preclusive effect. *See generally*, *Phil-Insul Corp. v. Airlite Plastics Co*, 854 F.3d 1344, 1357 (Fed. Cir. 2017) (explaining the difference in approach between the First and Second Restatement of Judgments regarding claim preclusive impact of alternative holdings); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 251–52 (3d Cir. 2006) (same).

effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4436, p. 149 [] (citing *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996) (dismissals for lack of jurisdiction "are not considered adjudications on the merits and ordinarily do not, and should not preclude a party from later litigating the same claim, provided that the specific defect has been corrected. Such a dismissal should, however, preclude relitigation of the specific issue of jurisdiction ... already resolved."); *see also* [Wright] at p. 154 ("Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question.") (citing *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("[U]nder principles of issue preclusion, even a case dismissed without prejudice has preclusive effect on the jurisdictional issue litigated."))

*See, e.g.*, *Norvell v. Blue Cross and Blue Shield Assn.*, 2017 WL 460812, *2 (D. Idaho Feb. 2, 2017). The District of Columbia district court's holding that the State of California is an indispensable party has preclusive effect.

Despite Defendants' having met all of the elements for issue preclusion, Picayune contends that the California Fifth District Court of Appeals decision in *Stand Up for California! v. State of California*, 6 Cal.App.5th 686 (Cal. Ct. App. 2016) *rev. granted* 215 Cal.Rptr.3d 2 (Mar. 22, 2017)—determining that the Governor lacked the authority to concur under California law— shifted the landscape such that issue preclusion based on the District of Columbia action is no longer appropriate. Although Picayune cites no authority for the proposition that issue preclusion should not apply in this context, the Court recognizes that shifting legal or factual landscape can justify non-application of issue preclusion even when all elements are met. *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting Restatement (Second) of Judgments § 28, cmt. c (1980) ("[E]ven where the core requirements of issue preclusion are met, an exception to the general rule may apply when a "change in [the] applicable legal context" intervenes."); *see No Casnio in Plymouth v. Jewell*, 136 F.Supp.3d 1166, 1186 (E.D. Cal. 2015) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) ("If different facts are in issue in a second case from those that were litigated in the first case, then the parties are not collaterally estopped from litigation in the second case. If the litigated issues are the same–the same facts at issue–estoppel will apply and an offer of different proof in a later case will not provide

escape.”))

Picayune's focus is on the underlying question of California substantive law—the validity of the concurrence; it does not discuss the Rule 19 determination or the State of California's interest in the issues to be litigated in this action. Picayune's position is flawed for two reasons. First, Picayune suggests that the validity of the Governor's concurrence "has been conclusively decided by California's Fifth Appellate District Court of Appeal." Doc. 33 at 10. In fact, Picayune goes on to suggest, "if California were involved in this action, [North Fork and the United States] would be precluded [by res judicata] from arguing that the Governor's concurrence was valid" as a result of the California Fifth District Court of Appeal decision. Doc. 33 at 11. Picayune's assertion rests on a misunderstanding of California's rules of res judicata.[7] Under California law, a decision is not final for purposes of res judicata "while open to direct attack." *Abelson v. National Union Fire Ins. Co*, 28 Cal. App.4th 776, 787 (Cal. Ct. App. 1994); *accord Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1105 n.3 (9th Cir. 2010); *Manco Contracting Co. v. Bezdikian*, 45 Cal.4th 192, 202 (2008); *People v. Sims*, 32 Cal.3d 468, 486 (1982) superseded by statute on other grounds by Cal. Veh. Code § 13353.2; *Smith v. Nationstar Mortgage LLC*, 2015 WL 4652699, *3 (C.D. Cal. Aug. 4, 2016). When the California Supreme Court grants a petition for review, the California Court of Appeal's decision is not final for purposes of res judicata. *See Geographic Expeditions*, 599 F.3d at 1105 n.5. The California Fifth District Court of Appeal's decision in *Stand Up* does not have any res judicata effect because it is not a final decision.

Second, Picayune suggests that the State of California is no longer a necessary party to this action.[8] Picayune ignores that the State of California continues to litigate its position (now in

---

[7] The Full Faith and Credit Act requires federal courts to give preclusive effect to judgments issued by state courts where those judgments would be given preclusive effect in state proceedings. *See* 28 U.S.C. § 1738. This Court applies California's rules of res judicata to claim and issue preclusion issues arising from the decision by the California Fifth District Court of Appeal. *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008); *Burks v. Caso*, 2017 WL 2311746, *2 (E.D. Cal. May 26, 2017).

[8] A party can be necessary within the meaning of Rule 19(a) in either of two ways: (1) a party is necessary if complete relief cannot be granted in its absence; or (2) the absent party's participation is necessary to protect its legally cognizable interests or to protect it from a substantial risk of incurring multiple or inconsistent obligations because of those interests. *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 879-880 (9th Cir. 2004); Fed. R. Civ. P. 19(a). The District of Columbia district court determined that California was necessary

two actions pending before the California Supreme Court) that the Governor had the authority to concur with the Secretary's two-part determination. *See United Auburn Indian Community of the Auburn Rancheria v. Brown*, State Respondent's Answering Brief, 2017 WL 2812470, *24-25 (Cal. June 26, 2017).[9] California's interest in defending the Governor's concurrence does not appear to have diminished in any way. The State of California remains a necessary party for the same reasons articulated by the District of Columbia district court. *See Stand Up for California! v. Dept.of the Interior*, 204 F.Supp.3d at 251 ("[T]o the extent that Stand Up seeks to have this Court declare the Governor's concurrence invalid, they have neglected to join the party that is purported to have acted unlawfully—the Governor of California.")[10]

**C. Picayune's claims resting upon the 2012 Compact being "in effect."**

Picayune's sixth and eighth causes of action are premised in part upon the impropriety of Secretarial procedures because the 2012 Compact was "in effect pursuant to IGRA since October 2013." FAC at ¶ 89; *accord* FAC at ¶ 102. Presumably, Picayune's contention that the compact has been in effect since October 2013 rests upon the record of decision issued by Assistant Secretary of Indian Affairs, Kevin Washburn, published on October 22, 2013, entitled "Notice of Tribal-State Class III Gaming Compact taking effect," which reads as follows:

> Under section 11 of the Indian Gaming Regulatory Act (IGRA), Public Law 100-497, 25 U.S.C. 2701 et seq., the Secretary of the Interior shall publish in the Federal Register notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. The Compact between the State of California and the North Fork Rancheria of Mono Indians allows for one gaming facility and authorizes the Tribe to operate up to 2,000 gaming devices, any banking or percentage card games, and any devices or games authorized under State law to the State lottery. The Compact, also authorizes limited annual payments to the State for statewide exclusivity. Finally, the term of the compact is until December 31, 2033. The Secretary took no action on the Compact within 45 days of its submission by the Tribe and the State. Therefore, the compact is

---

because it has an interest in the action that would be impaired by resolving the matter in its absence. *Stand Up for California! v. Dept. of Interior*, 204 F.Supp.3d at 253.

[9] Briefing in *Stand Up for California v. State of California* is deferred pending the resolution of *United Auburn*. *See* 390 P.3d 781. Because the issue in both actions is the same, the Court can safely infer that the State of California will take the same position in both actions.

[10] Even if issue preclusion were inapplicable, this Court agrees with the District of Columbia district court's conclusion that California is a necessary party that cannot be joined and is indispensable to the action such that this Court cannot, in equity and good conscience, allow this action to proceed in California's absence. *See* Fed. R. Civ. P 19(b); *Stand Up for California! v. Dept. of the Interior*, 204 F.Supp.3d at 252-254.

> considered to have been approved, but only to the extent that the Compact is
> consistent with IGRA. See 25 U.S.C. 2710(d)(8)(C).

78 FR 62649-01 (Oct. 22, 2013). The Court reads Picayune's claims to contend that the 2012 Compact is in effect because of the Assistant Secretary's issuance of "[n]otice of the Tribal-State Class III Gaming Compact taking effect." *See* 78 FR 62649-01.

### 1. Judicial Estoppel

Facially, Picayune's position that the 2012 Compact is in effect appears directly contrary to the position that it took in the District of Columbia action. *Stand Up for California v. Dept. of the Interior*, 204 F.Supp.3d 212, 248. In resolving the cross-motions for summary judgment before it, the District of Columbia Court relied upon the agreement by all parties "that the 2012 Tribal-State Compact is not in effect and will not govern the North Fork Tribe's gaming operations at the Madera Site." *Id.* The court specifically noted Picayune's Response to the court's August 16, 2016 Order, where Picayune acknowledged that "a compact … was never in effect." *Id.* (citing ECF No. 165 at 4); *see also Stand Up for California! v. Dept. of the Interior*, No. 1:12-cv-02039-BAH, Picayune's Motion for Summary Judgment, Doc. 108-1 at 11-12 (D.D.C. Jan. 9, 2015) (contending that the 2012 Compact was never validly entered into under California law); *Id.*, Picayune's Reply re Motion for Summary Judgment, Doc. 115 at 29-30 (arguing that the 2012 Compact was never effective under federal law because it was never validly entered into under California law).

As Picayune explained to the District of Columbia district court in its response to the court's August 16, 2016 order, "[j]udicial estoppel 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Stand Up for California! v. Dept. of the Interior*, No 1:12-cv-2039-BAH, Doc. 165 at 6-7 (D.D.C. Aug. 19, 2016) (quoting *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *accord Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001); *see also In re Auyeung*, 2015 WL 3609301, *11 (B.A.P. 9th Cir. June 9, 2015) ("[J]udicial estoppel ... can be raised by courts sua sponte, because judicial estoppel concerns the integrity of the judicial system independent of the interest of the parties.")

(collecting cases); *In re Airadigm Commc'ns, Inc.*, 616 F.3d . "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton v. State Farm*, 270 F.3d at 783. It is "designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-750. In considering whether to impose judicial estoppel, courts consider: "(1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position[;] and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *United States v. Ibrahim*, 522 F. 3d 1003, 1009 (9th Cir. 2008) (internal quotation marks and citation omitted).

As a preliminary matter, in order to engage in class III gaming pursuant to a tribal-state compact, "the State and the Tribe must have [validly] 'entered into' a compact [under applicable state law] *and* the compact must be 'in effect' pursuant to Secretarial approval…." *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1553 (10th Cir. 1997) (emphasis in original). If a compact was not validly entered into under state law or the Secretary has not given effect to a compact, class III gaming cannot be conducted pursuant to a tribal-state compact.

The Court must examine whether Picayune's claims are clearly inconsistent with their prior position. As the Court understands Picayune's present argument, Picayune argues that the Secretary erred in issuing gaming conditions pursuant to the IGRA remedial framework because the Secretary had already given effect to the 2012 Compact.[11] As noted above, Picayune's argument appears to rely upon the Assistant Secretary of Indian Affairs' Record of Decision declaring the 2012 Compact to be "taking effect." *See* 78 FR 62649-01. Picayune's argument further relies upon the understanding that the Secretary should not prescribe gaming conditions if the Department of the Interior previously gave effect to a Tribal-State compact between the state

---

[11] Picayune does not appear to contend that the 2012 Compact was validly entered into under California law. If Picayune had so alleged, California would be an indispensable party—to defend the validity of its referendum process—for claims relying on that allegation. *See Citizens for Planning Responsibility v. County of San Luis Obispo*, 176 Cal.App.4th 357, 366 (Cal. Ct. App. 2009) ("The state constitutional right of initiative or referendum is one of the most precious rights of our democratic process.")

and the tribe.

In the District of Columbia action, Picayune contended that the 2012 Compact was never validly entered into[12] under California law as a result of Proposition 48. *Stand Up for California! v. Dept. of the Interior*, No. 1:12-cv-02039-BAH, Picayune's Motion for Summary Judgment, Doc. 108-1 at 11-12 (D.D.C. Jan. 9, 2015); *Id.* at Doc. 165 at 5-6 ("The IRA and IGRA [Records of Decision] violate the APA because they are based on a compact that was never in effect.") Picayune further argued that the Secretary's approval of the 2012 Compact did not render the compact effective under IGRA. *Id.*, Doc. 115 at 29-30, 33-34 ("The compact cannot become effective under federal law until the 'entered into' requirement is independently met." The entered into requirement was not met. "The Secretary's … publication of an invalid compact in the Federal Register did not, nor could it, have any legal effect.")

Picayune's present position is inconsistent with the position it advanced in the District of Columbia action. The 2012 Compact cannot be both in effect and not in effect.

The district court in the District of Columbia action was persuaded that the 2012 Compact was not in effect (and was never validly entered into). *Stand Up for California!*, 204 F.Supp.3d at 248. It relied on that representation in resolving claims. *Id.* ("As a result, the validity of the Compact is simply no longer at issue… and the … claims that are premised upon the Compact's alleged invalidity fail to provide a basis upon which relief can be granted.") Picayune's position that the 2012 Compact was not in effect and was never validly entered into impacted the outcome of the District of Columbia action.

Finally, it would be unfair to allow Picayune to take an inconsistent factual position that would make its case significantly stronger. *See Baughman v. Walt Disney World Co*., 685 F.3d 1131, 1134 (9th Cir. 2012) (a plaintiff relying on an irrevocably inconsistent position to make his or her case stronger amounts to taking unfair advantage). It is clear from Picayune's statements that it is "playing fast and loose with the courts, seeking advantage by advancing mutually

---

[12] For the sake of clarity, the Court will use the terminology embraced in *Santa Ana v. Kelly*—a compact is validly "entered into" if the compact is completed pursuant to state law between the state and tribe, *see* 25 U.S.C. § 2710(d)(3); a compact is "in effect" if the Secretary approves the compact pursuant to 25 U.S.C. § 2710(d)(3)(B) and (d)(8)(A).

exclusive contentions" to different courts. *Johnson v. Oregon Dept. of Human Resources*, 141 F.3d 1361, 1369 (9th Cir. 1998).

Picayune is judicially estopped from advancing the argument that the 2012 Compact is in effect in light of the District of Columbia's adoption of the opposite position advanced by Picayune in the District of Columbia action.

> *2. The Assistant Secretary's October 2013 determination that the 2012 Compact is "in effect" has no impact on the issuance of secretarial procedures.*

Even assuming Picayune was not judicially estopped from contending that the 2012 Compact is in effect, its claim fails as a matter of law. As Picayune and North Fork agreed in the Good Faith Litigation, at least three statutory prerequisites exist to an Indian tribe filing an IGRA action alleging that a state failed to negotiate in good faith toward an enforceable compact. *Good Faith Litigation III*, 2016 WL 4208452, *4, Doc. 46 at 7-8 (E.D. Cal. Aug. 10, 2016) [13]; *see also Good Faith Litigation I*, 2015 WL 11438206 at *7. First, the tribe must exercise jurisdiction over Indian land. *Id.* Second, the Indian land must be eligible for class III gaming. *Id.* at *4. Third, the tribe and the State must not have entered into an enforceable Tribal-State compact. *Id*. If any of those requirements is lacking, a State is not obliged by IGRA to come to the bargaining table. Insofar as Picayune now intends to argue that the remedial process set in motion by the Good Faith Litigation was invalid because the 2012 Compact was "in effect," it is wrong. Although the Secretary giving effect to a compact is a necessary condition for an Indian tribe to conduct gaming pursuant to a Tribal-State compact, *see* 25 U.S.C. § 2710(d)(1)(C) ("Class III gaming activities shall be lawful on Indian lands only if such activities are … conducted in conformance with a Tribal-State compact entered into by the Indian tribe and state … that is in effect"), standing alone, it does not preclude an action to compel good-faith negotiation pursuant to Section 2710(d)(7)(A)(i). It is not disputed that, as a result of the referendum vote, the 2012 Compact was not validly entered into under California law. North Fork then demanded that the State of California negotiate a new compact. *Good Faith Litigation I*, 2015 WL 11438206 at *7.

---

[13] The Court did not resolve whether those statutory prerequisites were jurisdictional. *Id.* at 8-9 ("[T]he Court assumes [without deciding] that the statutory prerequisites to filing an IGRA action are standing requirements.")

The State of California refused. *Id.* The Court determined that California failed to negotiate in good faith with a tribe toward concluding an enforceable compact, triggering the mandatory, mechanical process set out in Section 2710(d)(7)(B)—none of which required or permitted consideration of whether the Secretary had (potentially erroneously) given effect to a prior compact that was not validly entered into under state law.[14] *See Id.* at *7-9. Once the Court ordered initiation of the IGRA remedial process, the Secretary was without discretion. Once the Secretary was presented with the tribal-state compact selected by the mediator and rejected by the state, the Secretary was required to prescribe procedures under which class III gaming could be conducted on the Madera Site. *See* 25 U.S.C. § 2710(d)(7)(B)(vii). The Secretary did not err by prescribing procedures under which North Fork could conduct class III gaming at the Madera Site.

## V. Order

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motions for summary judgment are GRANTED in part as follows:

1. Claims One through Five and Seven are adjudicated in favor of Defendants because Picayune is issue precluded from re-litigating whether California is an indispensable party to claims challenging the validity of the Governor of California's concurrence with the Secretary's two-part determination;

2. Claim Six and Eight are adjudicated in favor of Defendants insofar as it relies on the invalidity of the Governor's concurrence, for the same reasons as Claims One through Seven;

3. Claim Six and Eight are adjudicated in favor of Defendants insofar as they contend that the Secretary's action in prescribing Secretarial Procedures was in error because the 2012

---

[14] Picayune suggests that North Fork was in legal no-man's-land: it could not conduct gaming because the 2012 Compact was not validly entered into under state law; it could not begin down the path of the IGRA remedial process because the Secretary had given effect to the 2012 Compact. Picayune is wrong. It would be absurd to think that the Secretary's approval of an invalid compact—although insufficient on its own to authorize gaming—operated as a trap, permanently impeding an Indian tribe from ever conducting gaming. Such is not the intent of IGRA. *See* 25 U.S.C. § 2701(5) ("Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity."); see generally 25 U.S.C. § 2702.

Compact was in effect pursuant to the Assistant Secretary's October 2013 decision. The Clerk of the Court is respectfully directed to close this case.

IT IS SO ORDERED.

Dated:  August 17, 2017          _____
                                        SENIOR  DISTRICT  JUDGE